633 A.2d 155

**Laura A. CRAWFORD, Appellee,**

v.

**Ernest M. CRAWFORD, Appellant. (Two Cases)**

Superior Court of Pennsylvania.

Argued May 12, 1993.

Filed Oct. 14, 1993.

542

544

Louise A. Geer, New Castle, for appellant.

Frank G. Verterano, New Castle, for appellee.

Before McEWEN, OLSZEWSKI and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge.

Ernest Crawford ["husband"] appeals the propriety of a support order entered September 12, 1991, and an order modifying support entered October 13, 1992. We affirm in part and reverse and remand in part.

On May 17, 1988, Laura A. Crawford ["wife"] filed for spousal support and support for the parties' dependent adult child, Patricia Crawford ["Patty"]. Because the parties waived proceeding pursuant to Pa.R.C.P. 1910.11, the complaint was heard on August 30 and 31, 1988, without first being considered by a hearing officer of the Domestic Relations Section of the Court of Common Pleas of Lawrence County. The evidence presented at the hearing revealed that the parties were married on December 4, 1952, and separated on February 29, 1988. Of the four children born of this marriage, only Patty was still residing with wife. Husband is a retired police officer and currently employed as a District Justice for the Commonwealth. At the time of the hearing, he was 58 years old and was earning net wages of $1,894.04, a net pension of $988.96, and a gross rental income of $100.00 per month. Wife worked at a library approximately 30 hours weekly and earned $6.85 per hour. Her monthly income was approximately $1,235.00, which included $314.00 in monthly Supplemental Security Income ["SSI"] benefits for Patty. Patty was 35 years old at the time and worked at a sheltered workshop, earning approximately $60.00 per month.

More than three years elapsed from the time of the hearings until the trial court finally entered a support order dated September 12, 1991. In the interim, husband continued to pay the monthly mortgage on the marital residence and provided health care coverage for wife and Patty.[1] Purporting to account for these payments, the order provided in part as follows:

2. [Husband] shall pay [wife] as spousal and child support the sum of $950.00 per month, unallocated, effective the date

1. Husband also claims to have contributed to other expenses such as automobile insurance for wife, although it is not apparent from the record whether these amounts were established.

of the filing of the complaint, May 17, 1988. If [husband], however, continues to timely pay the outstanding mortgage loan on the marital residence, [husband] shall pay the sum of $405.00 as spousal and child support, unallocated, effective May 17, 1988.

3. If [husband] is obligated to pay spousal and child support in the amount of $950.00 per month as provided in paragraph 2 above, which depends upon whether ["wife"] or ["husband"] pays the mortgage loan on the marital residence, then [husband] shall also pay the sum of $500.00 per month for all outstanding support arrearages, effective immediately.

If [husband] is obligated to pay spousal and child support in the amount of $405.00 per month as provided in paragraph 2 above, then [husband] shall also pay the sum of $250.00 per month for all outstanding support arrearages, effective immediately.

The effective date of the order was May 17, 1988, the date the complaint was filed. Husband was therefore three years in arrears.

Husband lodged his first appeal from the above support order on October 1, 1991. In his brief, husband claimed that: (1) the trial court abused its discretion in failing to issue the order of support for more than three years after the hearings; (2) it was an abuse of discretion to award retroactive support; (3) the trial court should have held additional hearings to ensure that the support order was based upon the parties' needs and provide credit for voluntary support payments; (4) the trial court abused its discretion in entering an order which exceeded the guideline ranges without providing adequate reasons on the record for doing so; (5) wife is not entitled to support; and (6) husband is not required to provide support for his adult child.[2] These issues were never resolved, howev-

2. Husband also raises in his brief a claim that the court improperly garnished more than fifty per cent of his wages. This issue is not properly presented here since the garnishment occurred subsequent to the filing of the notice of appeal and should have been taken from the order of garnishment. The issue is nevertheless moot because the

er, since the appeal languished for almost a year while the trial court prepared an opinion in response to husband's concise statement of matters complained of on appeal. The opinion was finally issued on August 19, 1992, and transmitted to this Court.

While the first appeal was pending, a number of events occurred. Wife filed a motion for attachment of wages, salary, and commissions and husband filed a motion to modify support.[3] Husband also filed a motion for supersedeas of arrearages and for removal of the wage attachment relating to arrearages on the basis that the trial court had failed to offset amounts contributed to support in the interim between the filing of the complaint and the entry of the order. The motion for supersedeas was granted on January 15, 1992. On January 21, 1992, wife filed a petition for contempt and reconsideration of supersedeas. The contempt charge was withdrawn and the reconsideration of supersedeas was continued generally upon agreement by the parties.[4] Finally, on March 2, 1992, the Honorable Judge Ralph D. Pratt recused himself from the case.

Following Judge Pratt's recusal, on June 12, 1992, wife filed a petition to modify support on the basis that Patty's SSI benefits had been terminated. The Honorable James B. Dwyer entered a new order on June 23, 1992, which reduced, *inter alia*, husband's unallocated support obligation to $310.00 per month and set arrearage payments at $250.00 per month.

initial order has been reduced to an amount which can clearly be garnished. *See* 23 Pa.C.S.A. § 3703.

3. Husband alleged in the petition for modification that a substantial change in circumstances had occurred because: (1) Patty received an increase in her SSI benefits, (2) husband had not been credited for payment of automobile insurance for wife, (3) wife had claimed to Domestic Relations that her medical bills were not being paid when, in fact, they had not been properly submitted to the insurance company for reimbursement, (4) wife was earning unreported additional income and had received a substantial inheritance, and (5) he had experienced a decrease in income.

4. The reason for the continuance was that husband had not yet posted bond pursuant to Pa.R.A.P. 1731, 42 Pa.C.S.A. Wife's objection was preserved until such time as bond would be posted.

The order also directed wife to request a review of Patty's SSI benefits. Husband and wife filed demands for a hearing *de novo* on July 15 and 16, 1992, respectively. Counsel for Patty filed a motion for modification of Patty's support on July 27, 1992, and a motion to intervene as counsel on October 5, 1992.

Judge Dwyer held a hearing *de novo* on October 13, 1992, at which time the parties stipulated to the following facts: wife earns $950.00 per month, Patty receives $314.00 per month in SSI benefits and $56.00 per month at Lark Workshop for a total of $1,254.00 per month for wife and Patty, and husband's net income is $3,000.00. N.T. 10/13/92 at 3–5. As a result, Judge Dwyer entered a new order, replacing the June 23, 1992, order, which directed husband to pay wife "the sum of $834 a month, less the montly [sic] mortgage payment on the house, in addition the $250.00 a month arrearages shall continue." It is clear from the record that the substance of the order was reached by agreement of the parties. While the parties' incomes remained approximately the same, the net result of these proceedings was a downward modification of husband's support obligation.

Husband lodged the second appeal from the October 13, 1992, order. In his brief, husband incorporates by reference all of the arguments previously raised in the first appeal which remained unresolved. We will initially address the issues raised in the first appeal. Insofar as the first order has been replaced by the second, our discussion of these claims shall relate to arrearages.

In support proceedings, the role of this Court is limited to a determination of whether an abuse of discretion, as shown by clear and convincing evidence, has occurred. *McAuliffe v. McAuliffe,* 418 Pa.Super. 39, 613 A.2d 20 (1992); *Zullo v. Zullo,* 531 Pa. 377, 613 A.2d 544 (1992). In applying this standard we acknowledge that an abuse of discretion is not "merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record,

discretion is abused." *Spitzer v. Tucker,* 404 Pa.Super. 539, 541, 591 A.2d 723, 724 (1991).

## I.

■ Our evaluation most logically begins with husband's contention that wife and Patty are not entitled to support. A dependent spouse is entitled to support until it is proven that the conduct of the dependent spouse constitutes grounds for a fault divorce. *Roach v. Roach,* 337 Pa.Super. 440, 487 A.2d 27 (1985). The party seeking to nullify the obligation bears the burden of proving the conduct claimed by clear and convincing evidence. *Id.*

■ Here, the trial court found as a fact that wife did not engage in marital misconduct of the type which would bar her claim for support. As the court explained:

> The divorce grounds relied upon by [husband] to bar the support claim by [wife] presumably are indignities and adultery. As evidence of the grounds for these defenses, [husband] testified as to various unpleasant episodes that had taken place between himself and [wife], and several associations between [wife] and other men.
>
> For indignities to lie, the proponent must not only prove a course of conduct by the other side which made the proponent's life intolerable and his condition burdensome, but also that the proponent was an injured and innocent spouse. *Beaver v. Beaver,* 313 Pa.Super. 512, 460 A.2d 305 (1983); *Regan v. Regan,* 227 Pa.Super. 552, 322 A.2d 711 (1974). What we have *sub judice* are, at the very most, escalating incidents resulting from the disintegration of a relationship and in which the parties mutually participated. In addition to the denials of instigation, this is the plain credible import of [wife's] testimony. [N.T. 8/31/88 at 113–145]. What amounts to at least mutual participation by [husband] is even somewhat implicit throughout the defendant's own testimony.

Trial court opinion at 4. Regarding husband's allegations of adultery, the court stated:

> Even if this Court had seen [husband's] attack as well made and [wife's] denials as weak, the attack's effects would have been thwarted by [husband's] parry of condonation. Acts of sexual intercourse after knowledge of said transgressions bars divorce on grounds of adultery (and hence a defense of entitlement). [*Boyles v. Boyles*, 170 [179] Pa.Super. 184, 116 A.2d 248 (1955)]. Here again [wife's] supporting testimony was ample and satisfying. *See* [N.T. 8/31/88 at 103 and 113].

*Id.* at 5.

■■■■ Husband concedes that questions of credibility are solely for the trial court as factfinder to decide. *See Murphy v. Murphy,* 410 Pa.Super. 146, 599 A.2d 647 (1991), *alloc. denied,* 530 Pa. 633, 606 A.2d 902 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992). Nevertheless, he claims the trial judge abused his discretion in crediting wife's testimony because he was biased, partial, and should have recused himself. Husband suggests that the trial judge's assessment of credibility was "wholly unwarranted" in light of the fact that wife's testimony was "impeached, rebutted and factually disproved." Appellant's brief at 31. This issue is waived.

■■■■ "[A] party seeking recusal or disqualification must raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred." *Ware v. U.S. Fidelity & Guaranty Co.,* 395 Pa.Super. 501, 505, 577 A.2d 902, 904 (1990).

> When circumstances arise during the course of a trial raising questions of a trial judge's bias or impartiality, it is still the duty of the party, who asserts that a judge should be disqualified, to allege by petition the bias, prejudice or unfairness necessitating recusal. A failure to produce a sufficient plea will result in a denial of the recusal motion.

*Id.* (*quoting Reilly by Reilly v. SEPTA,* 507 Pa. 204, 220, 489 A.2d 1291, 1299 (1985)). Failure to request recusal before the trial judge has ruled on the substantive matter before him or her precludes the right to have a judge disqualified. *Id.*

Judicial bias may not be raised for the first time during post-trial proceedings. *Id.* Here, husband failed to seek recusal before Judge Pratt ruled on the entitlement issue. He cannot now be heard to complain that the judgment in this regard was biased or prejudiced. Thus, given wife's credited testimony, we find there was sufficient evidence to support the trial court's finding that wife is entitled to support.

■ Husband challenges Patty's entitlement to support on the basis that he cannot be forced to support an adult daughter who is otherwise entitled to federal benefits. Husband also claims the trial court failed to consider whether providing continuous support for an adult child would be an undue burden on him. This is not the test in determining support for an adult child who is unemancipated because of a physical or mental condition.

■ It is true that a parent's child support obligation generally ceases when the child reaches 18 or graduates from high school, whichever comes later. *DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508 (1987); *Hanson v. Hanson,* 425 Pa.Super. 508, 625 A.2d 1212 (1993). Observing a long-recognized exception to this rule, however, a panel of this Court recently acknowledged that parental support is required where a child has a physical or mental condition which exists at the time the child reaches majority and prevents the child from being self-supporting or emancipated. *Hanson, supra; see also* 23 Pa.C.S.A. § 4323.

Undoubtedly, the presumption is when a child reaches majority, the duty of the parent to support that child ends. Once the presumption arises, it is then incumbent upon the child to rebut the presumption. The duty to support the adult child continues where the child is physically or mentally feeble or otherwise unemployable. The adult child, however, has the burden of proving the conditions that make it impossible for her or him to be employed.

*Verna v. Verna,* 288 Pa.Super. 511, 515–516, 432 A.2d 630, 632 (1981) (citations omitted); *see also Com. ex rel. Cann v. Cann,* 274 Pa.Super. 274, 418 A.2d 403 (1980).

In the instant case, the trial court found that Patty was incapable of self-support due to her mental and physical condition. Contrary to husband's contention, we find that the record substantiates the trial court's findings. The court as factfinder has the benefit of viewing the witnesses and hearing the evidence first hand. *Hanson, supra.* Here, the trial court credited wife's testimony that Patty suffers from a genetic mental disorder and cerebral palsy. She has the mental and emotional capacity of a young child. The court also conducted an *in camera* meeting with Patty.[5] This provided sufficient evidence to support the trial court's conclusion that Patty is entitled to support. Absent indication that the trial court abused its discretion, we will not reverse the child support order. *DeWalt v. DeWalt, supra.*

Moreover, we reject husband's suggestion that our Supreme Court's recent decision which abolished the support requirement for adult college children, *Blue v. Blue,* 532 Pa. 521, 616 A.2d 628 (1992), may be read so broadly as to excise our laws regarding support of dependent adult children. Initially, we note that the Pennsylvania General Assembly enacted 23 Pa.C.S.A. § 4327 on June 23, 1993, effectively overruling *Blue* and providing that the government "has a rational and legitimate interest in requiring parental assistance for a higher education for children of parents who are separated, divorced, unmarried or otherwise subject to an existing support obligation." Moreover, husband's interpretation of *Blue* is completely incongruous with our historically divergent consideration of a child's need for college tuition and the absolute duty of a parent to support a child who is incapable of self-care. Prior to *Blue*, we held that "a parent must sacrifice to support and maintain minor dependent children while he is not required to sacrifice to send his older children to college or post-high school training." *Horst v. Horst,* 406 Pa.Super. 188, 191,

---

**5.** The simple fact that the trial court chose to interview Patty in chambers without the presence of the parties or a court reporter does not, as husband argues, suggest that the support award was entered on an inadequate basis. We find the trial court's decision to interview Patty in this manner was well within the court's discretion, given the nature of her disability.

593 A.2d 1299, 1300 (1991). Pursuant to *Blue,* parents were not required to provide college support for their adult children; the decision, however, did not provide even the slenderest reed to support an inference that parents should not be required to support dependent adult children.

Finally, husband urges that a parent's economic responsibility must be terminated either through the child's own emancipation and ability to care for herself or by the assumption of those financial responsibilities through state entitlement programs. Here, husband calls upon us to delineate a termination point at which a parent is no longer economically responsible for an adult child. "Surely the law does not expect parents to be responsible for the bills of all their children for their lives," he implores. Squarely addressing this point, we have stated that "[s]ociety will not step in and care for the [adult dependent] child if the parent is capable of providing support." *DeWalt,* 365 Pa.Super. at 286–287, 529 A.2d at 512 ("parent's legal obligation arises from his moral responsibility to care for the child whom he brought into the world"). We note that a parent is only called upon to support an adult child to the extent the child cannot aid him or herself. Thus, "the 'reasonable needs' of an adult child are those needs which he is unable to meet through his own efforts." *Id.* at 286, 529 A.2d at 511.

Pennsylvania law makes it abundantly clear that husband must contribute to Patty's support to the extent she is unable to support herself. Husband's claim that Patty is not entitled to support therefore fails.

## II.

Husband's next claim is that the trial court abused its discretion in failing to issue the support order for more than three years after the support hearings.[6] Husband provides no

**6.** Husband did not raise this issue in his statement of matters complained of an appeal, and we note that this defect could be considered a waiver of the claim. Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A. As our ability to meaningfully review the claim is not hampered by the omis-

basis in law or fact upon which this Court may grant him relief. While we do not condone the significant delay generated by the trial court in this case and acknowledge the difficulties it caused, we fail to see how husband has been prejudiced. As wife notes, husband is not required to pay interest on the outstanding arrearages. Nor was he required to pay support pursuant to a temporary order. Finally, at all times throughout the proceedings, husband was represented by counsel. He is charged with the knowledge that the effective date of the order is presumed to be the date the complaint was filed, Pa.R.C.P., Rule 1910.17(a), 42 Pa.C.S.A., absent articulated reasons for a non-retroactive order.

Husband's assertion that the trial court was required to enter a final order within 45 days of the hearing pursuant to Pa.R.C.P. Rule 1910.11, 42 Pa.C.S.A. is unfounded. Rule 1910.11 sets forth the procedure to be followed during and after an office conference is conducted by a hearing officer. The rule only applies where no agreement has been reached by the parties at the conference and the court enters a temporary order from which a request for a hearing *de novo* has been filed or may be filed within ten days. Neither situation is applicable here since the parties did not proceed before a hearing officer and no temporary support order was entered. Rule 1910.11 does not support husband's contention that he is entitled to relief based on the trial court's delay.[7]

Next, husband argues that the court erred in making the support order retroactive to the date the complaint was filed. Specifically, husband claims that the trial court should have held additional hearings to determine the extent of direct

sion, however, we will review it. *See Commonwealth v. Silver,* 499 Pa. 228, 452 A.2d 1328 (1982).

7. We acknowledge that the legislature amended Rule 1910.11 to provide for the forty-five-day time limitation in an effort to underscore "the necessity of a prompt judicial determination." Explanatory Comment—1988. "Forty-five days is believed to be a reasonable limitation which each county should be able to meet." *Id.* While perhaps instrumental in prompting a court to enter a support order, the legislature's pronouncement in this regard does not comport with husband's suggestion that the present order should be vacated and the parties begin anew because the order was not entered within forty-five days.

payments contributed to wife's support during the three years between the hearings and the order. He maintains that wife's and Patty's needs were being met through direct payments. In a protection from abuse case between the parties, wife never requested emergency support which he argues indicated that her needs were being met. Wife also petitioned at No. 15 of 1988 for payment of some medical bills and summer camp which was apparently settled by the parties without a hearing. This, he urges, raises a presumption that retroactive support was inappropriate.

Rule 1910.17 of the Pennsylvania Rules of Civil Procedure provides, in relevant part, "[a]n order of support shall be effective from the date of the filing of the complaint unless the order specifies otherwise." Pa.R.C.P., Rule 1910.17(a), 42 Pa.C.S.A. "There is a sound policy favoring retroactivity in most cases." *Sutliff v. Sutliff,* 339 Pa.Super. 523, 526, 489 A.2d 764, 781 (1985), *aff'd* 515 Pa. 393, 528 A.2d 1318 (1987). Consequently, an order denying retroactive support will only be upheld where the trial court articulates specific and appropriate reasons to justify a nonretroactive order. *Shovlin v. Shovlin,* 318 Pa.Super. 516, 465 A.2d 673 (1983); *Hainaut v. Hainaut,* 410 Pa.Super. 316, 599 A.2d 1009, 1011 (1991); *Young v. Muthersbaugh,* 415 Pa.Super. 591, 609 A.2d 1381 (1992).

Here, no reasons were advanced by husband at the hearings held in 1988 to justify nonretroactivity. The record only establishes that husband paid the mortgage on the marital residence. It is worth noting that husband was unwilling to provide further support because it was his position that wife and Patty were not entitled. Moreover, husband did not request additional hearings. If husband altered his position and provided voluntary support, we believe it was his burden to advise the court of any circumstances which would have rebutted the presumption of retroactivity. Only where such circumstances are indicated will an abuse of discretion be found in awarding retroactive support. *See Commonwealth ex. rel. Kinsey v. Kinsey,* 277 Pa.Super. 156, 419 A.2d 708 (1980) (where record failed to disclose when parties ceased

living together and where there was no evidence of what support was provided informally, the only effective date could be the date the order was issued).

Our decision in *Hainaut v. Hainaut, supra,* does not support husband's assertion that the trial court was obligated to hold additional hearings. In *Hainaut,* we held that the trial court did not abuse its discretion in denying retroactivity because it found sufficient evidence that husband had made substantial direct payments to wife. The court determined that these payments sufficiently satisfied wife's support needs during the nine-month period between the complaint and the order. Here, the record established only that husband paid the mortgage on the marital residence and provided health care coverage for wife and Patty through his employment. No other facts were established for the record indicating that husband was entitled to further credits.

 Finally, we reject husband's reliance on 23 Pa.C.S.A. § 4352(a) to support his claim that the court was required to hold additional hearings. This section provides:

> . . . a method shall be developed for the automatic review of each order of support at least once every three years from the date of establishment or the most recent review, for the purpose of making any appropriate increase, decrease, modification or recision of the order. If, however, it is determined that such a review would not be in the best interests of the child and neither parent has requested a review in the interim, no review shall be required.

*Id.* An order of support will not be modified in the absence of a change of circumstances. *Soncini v. Soncini,* 417 Pa.Super. 393, 612 A.2d 998 (1992). Husband could have filed a petition for modification prior to the entry of the support order. Any change in circumstances would relate back to the time the petition was filed and entitle husband to a credit towards arrearages outstanding.

 Our case law provides that retroactive support is intended to "alleviate hardship on a party who is entitled to support but who is required to proceed through the often slow

moving judicial process. Further it creates disincentive for the party liable for support to use dilatory tactics." *Commonwealth ex. rel. Bishop v. Bishop*, 234 Pa.Super. 600, 341 A.2d 153, 155 (1975); *Commonwealth ex. rel. Kinsey v. Kinsey*, 277 Pa.Super. 156, 419 A.2d 708 (1980). It follows that the longer the delay, the more apropos retroactivity becomes. *See Shovlin, supra* (retroactivity particularly appropriate where nineteen-month delay between date of filing of complaint; court abused discretion in failing to provide reasons for nonretroactivity). We reject the notion that wife's failure to seek interim support or emergency relief alters the presumption that she is entitled to retroactive support. Our research has failed to uncover a situation where the delay of the trial court resulted in waiver of support, nor are we inclined to judicially impose such a requirement for wife to preserve her right to a retroactive award. Accordingly, we find no abuse of discretion in awarding retroactive support.

## III.

 Husband also argues that the trial court abused its discretion in entering an order above the guideline ranges without providing adequate reasons on the record for doing so. Specifically, he notes that the support award deviated from the guidelines by more than ten per cent and that no findings were included in the record indicating how the support award was computed.[8] It is well settled that a court has discretion to enter a support award that is outside the guidelines after considering the unique needs of the parties. The court must, however, place reasons on the record for doing so. *Lesko v. Lesko*, 392 Pa.Super. 240, 572 A.2d 780 (1990). In his opinion, Judge Pratt stated that the parties' incomes were considered along with the reasonable needs and the special needs of Patty without indicating what these special needs were. He refused

---

**8.** It should be noted that Rule 1910.16–4 was amended January 27, 1993, nullifying the requirement that a court place reasons on the record where the support award is not within ten per cent above or below the guidelines. As amended, the court need only consider the factors outlined in the rule when providing reasons for deviating from the guidelines. Pa.R.C.P., Rule 1910.16–4, 42 Pa.C.S.A. The ten per cent general rule is no longer applicable.

to specify how the support award was computed because he believed the issue was moot on account of Judge Dwyer's modified order.

We first note that we cannot find the issue technically moot. There are outstanding arrearages to the original award, and husband properly appealed from that order. We are constrained, nonetheless, to agree with wife that the issue is waived.

Husband argues that the court failed to consider, through an on-the-record calculation, wife's and Patty's income in fashioning the award. While it is clear that the trial court's original failure to calculate its arrearage award might ordinarily give rise to a remand for such calculation on the record, *Lesko v. Lesko*, 392 Pa.Super. 240, 572 A.2d 780 (1990), husband, not the trial court, mooted the issue by agreeing to a subsequent order which adopted the original arrearage figure. *See* our discussion, p. 163, *infra.*[9]

Alternatively, wife argues that the guidelines are not applicable in considering support of an adult child. The authority cited by wife in support of this proposition, *Horst v. Horst*, 406 Pa.Super. 188, 593 A.2d 1299 (1991) and Pa.R.C.P. 1910.16–5, only applies to adult children enrolled in post-high school programs who otherwise would be emancipated. Regarding adult children who are unemancipated by virtue of a physical or mental condition, we hold that the guidelines are applicable and may be utilized in future support proceedings relating to this case.

## IV.

Husband's appeal from the modified order raises no issues relating to its inadequacy based upon change in

9. As we explain at p. 164, the procedure in this case was highly irregular, and our affirmance of the trial court in this case is based in large part on husband's consent to the trial court's second, modified order. For this Court to now remand for a calculation in a stale order would unduly promote form over substance, even if husband can successfully argue that he is entitled to the calculation. Husband agreed to the arrearage figure established by the modified order, did not object to an absence of calculation at that time, and we must consider him bound by that decision.

circumstances. Rather, he asserts all of the issues previously raised in the first appeal. Because the first appeal was pending at the time of the hearing on the petition to modify, the trial court was without jurisdiction to consider any of the issues raised in the first appeal. Pa.R.A.P. 1701, 42 Pa.C.S.A.; *Sutliff v. Sutliff,* 515 Pa. 393, 528 A.2d 1318 (1987). A petition to modify an order of support cannot be a substitute for an appeal and a party may not attempt to relitigate matters adjudicated in the existing order. *Koller v. Koller,* 333 Pa.Super. 54, 481 A.2d 1218 (1984); *Dunbar v. Dunbar,* 291 Pa.Super. 224, 435 A.2d 879 (1981). Thus, the issues were properly not considered by Judge Dwyer at the hearing on the modification. Since husband does not challenge any further matters adjudicated during the modification, we need not review his appeal. Pa.R.A.P., Rule 2116(a), 42 Pa.C.S.A.

Nevertheless, we have concerns relating to the modified order which we are compelled to address.[10] In substance there was no change in circumstances since the parties' needs and income did not change and the evidence at the hearing indicated that Patty's SSI benefits would be restored. As we noted above, however, Judge Dwyer's order reduced husband's support obligation. In essence, Judge Dwyer conducted a *de novo* review of the entire record. A court may only examine the entire situation *de novo,* however, where the support order is made without testimony; otherwise, it is limited to considering changed circumstances. *Bradley v. Bradley,* 387 Pa.Super. 503, 564 A.2d 504 (1989). Ordinarily, we would find the downward revision of the support award in this instance to be an abuse of discretion.

■ "A Court may only modify an existing support award when the party requesting the modification shows a material and substantial change in circumstances since the Order was entered." *Soncini v. Soncini,* 417 Pa.Super. at 399, 612 A.2d at 1000. In order to modify a support order, the moving party has the burden of proving by competent evidence that a

10. Although the trial court did not file an opinion, all of the calculations were discussed on the record at the hearing and may therefore be reviewed by this Court.

material and substantial change of circumstances has occurred since the entry of the original or modified order. *Soncini, supra.* The change in circumstances must be "permanent," meaning it is irreversible and indefinite in duration. *Leasure v. Leasure,* 378 Pa.Super. 613, 618, 549 A.2d 225, 226 (1988). We have refused to disturb a support award unless the trial court in determining the amount of support, has abused its discretion in determining the amount of the award and where the moving party's burden of proof has not been met. *Id.* 417 Pa.Super. at 399, 612 A.2d at 1000 (relating to child support orders); *Steenland–Parker v. Parker,* 375 Pa.Super. 457, 544 A.2d 1010 (1988).

Nevertheless, we cannot find under the novel factual scenario presented in this case, that Judge Dwyer abused his discretion. The first order failed to set a certain amount for arrearages and did not account for the fact that the mortgage fluctuates. Additionally, we cannot overlook the fact that the support order was outside the guidelines and the calculations were not included in the record. In contrast, the modified order was entered upon agreement of the parties and was calculated pursuant to the guidelines. In this limited circumstance, we would find it highly imprudent to revert back to the original order at this stage of the proceedings.

As a final matter, we remand for a determination of whether Patty's SSI benefits were inappropriately included in calculating Judge Dwyer's support award. Rule 1910.16–5, governing operation of the support guidelines, was amended on January 27, 1993, to include the following provision:

> **(q) Treatment of AFDC and SSI Benefits.** Where the obligee receives Aid to Families with Dependant Children (AFDC) or Supplemental Security Income (SSI) benefits, those benefits will not be counted as part of obligee's income for purposes of determining support.

Pa.R.C.P., Rule 1910.16–5, 42 Pa.C.S.A. Social Security Benefits are considered income pursuant to Rule 1910.16–5(b). Because the parties appear to use the terms Supplemental Security Income and Social Security Income interchangeably, we remand for a determination of whether the benefits re-

ceived by Patty should be included as income in calculating husband's support obligation in accordance with Rule 1910.16–5(q).[11] Also, we note that Judge Dwyer's order should indicate that the award includes child support. We otherwise find no error in Judge Dwyer's modified order.

The order dated September 12, 1991, is affirmed. The order dated October 13, 1992, is remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

11. We note that the presumption established by the guidelines is still subject to judicial discretion based upon evidence that permits application of the support formula established in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984). *Ball v. Minnick*, 414 Pa.Super. 242, 606 A.2d 1181 (1992) (plurality opinion). As we noted in *Ball*, a trial court is not compelled to apply the guidelines amount when that amount is unreasonable under the facts of the case. "[T]he guidelines are not mandatory, but a starting point and by implication they cannot and do not supersede *Melzer* or deny the trial judge or hearing officer of the discretion to mould support orders to meet the specific conditions of the parties." *Id.* at 256, 606 A.2d at 1188; *see also* 23 Pa.C.S.A. § 4322(a) (finding that application of guidelines "would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case, provided that the finding is based upon criteria established by the Supreme Court by the general rule"). Thus, although Supplemental Security Income may not be considered in calculating support under the guidelines, we believe that the trial court in its discretion may consider such income as a basis for deviating from the guidelines through application of the *Melzer* formula where application of the guidelines would render an unjust result.