# Hoover v. Gustison

*Mary H. Burchik,* for plaintiff/appellee.
*Jill E. Nagy,* for defendant/appellant.

CAMPBELL, *J.,* June 5, 2002—In the above-captioned child support matter, this court entered an order on March 28, 2002 dismissing defendant's exceptions to hearing officer's order of October 12, 2001. Defendant/appellant, Robert L. Gustison (Father) appeals the March 28, 2002 order to the Superior Court of Pennsylvania. This opinion is filed pursuant to Pa.R.A.P. 1925. The pertinent facts are as follows.

On August 29, 2001, a support hearing was held in this matter on plaintiff's petition to modify an order for support established in March of 1999, which hearing resulted in the above-mentioned October 12, 2001 order. Plaintiff/appellee is Candace Y. Hoover (Mother). Mother was present without counsel at the hearing. Father was not present at the hearing, but he participated by telephone. Jill Nagy, Esquire, was present on Father's behalf. (Notes of testimony p. 3.)

Heather J. Gustison, born on September 5, 1971, is the child of Mother and Father, who were formerly married. As described by Thomas C. Overholt M.D. in his report dated July 19, 2001, Heather is multiply handicapped and diagnosed with "congenital microcephaly, very difficult to control seizure disorder, spastic quad-

riplegia, profound mental retardation." She requires "total care including dressing, feeding, cannot ambulate and must be pushed in a wheelchair. She requires total care including hygiene." In his report, Dr. Overholt further provided that Heather has "multiple medical problems subsequent to her primary diagnosis." Dr. Overholt stated that Heather requires annual or semiannual appointments with dentists, opthalmologists, ENT and dermatologic specialists in addition to general medical care at his office, and that Heather is followed three to four times per year by the Department of Neurology at the Hershey Medical Center for adjustment of her seizure medications. (Notes of testimony, exhibit P-1.)

Dr. Overholt's July 19, 2001 report continued as follows:

"Heather's mother provides total care for her and purchased many items and sundries that are not covered by Heather's medical insurance. These items include but are not limited to pain relievers such as Tylenol or Ibuprofen, medicated powders and creams to maintain good skin care, diapers, disposable underpants and sanitary pants, medicated shampoos for significant seborrhea and scalp care, other dermatologics as needed. Food processor for pureed diet, thickener designed to help food and drink for her chronic dysphagia and swallowing difficulties. These are necessary to prevent or reduce the risk of aspiration. She requires a handicap ramp, railing, wheelchair, hospital bed capable of multiple positions.

"For her personal care and medical supplies including an ear thermometer, surgical gloves, disposable wipes are needed. Bathing is assisted through a modified shower

stall with seat. Mouth care is assisted through a waterpik. Vitamin and mineral supplements, allergy, cold and flu medications are used." (Notes of testimony, exhibit P-1.)

Although 29 years old, Heather is an adult child unemancipated for purposes of receiving child support due to her disability. (Notes of testimony p. 5.) Mother is Heather's primary caretaker. (Notes of testimony p. 4.) This role prevents Mother from being employed in any capacity. Thus, the current order for support was established in March of 1999 solely on Father's income. (Findings of fact, conclusions of law and recommendation of the domestic relations hearing officer, 10/22/01, p. 2.)

Mother's monthly net income is $0; Father's monthly net income is $9,905. (Notes of testimony pp. 3-4.)

With regard to Supplemental Security Income (SSI) payments, Heather first became disabled, pursuant to a statement/letter from the Social Security Administration dated April 12, 2001, in November 1976. She became eligible to receive monthly SSI benefits, which benefits continued until February 2001. According to said statement/letter, Heather's SSI benefits were suspended due to the support amount received from Father. (Notes of testimony pp. 5-6; exhibit D-1.) (Findings of fact, conclusions of law and recommendation of the domestic relations hearing officer, 10/22/01, pp. 1-2.)

Heather's only medical insurance coverage is medical assistance (Notes of testimony p. 6), despite the fact that the current support order entered in March of 1999 provided that Father should continue pursuing application for private medical insurance for Heather. (Notes of testimony p. 8.) The March 1999 order placed an agreed

upon cap on Father's liability for unreimbursed medical expenses in the amount of $1,500 per year due to the lack of private medical insurance for Heather at that time. (Findings of fact, conclusions of law and recommendation of the domestic relations hearing officer, 10/22/01, p. 3.)

Father testified at the August 29, 2001 hearing that after contacting his private medical insurance carrier once in 1999 with regard to obtaining coverage for Heather, he never followed through with the process, and the matter "just fell through the cracks." (Notes of testimony pp. 8-9.)

Mother filed the above-mentioned petition for support modification, docketed on or about April 25, 2001, seeking an increase in support payments for Heather due to the suspension of SSI payments to Heather in March 2001, and the extraordinary expenses incurred by Mother on a monthly basis for Heather's care. (Notes of testimony pp. 5-6; exhibit D-1.) (Findings of fact, conclusions of law and recommendation of the domestic relations hearing officer, 10/22/01, pp. 1-2.)

Father's "proposal" is that the current order of support be reduced to an amount below the maximum income limit allowed by the Social Security Administration in order that Heather may again receive SSI benefits and continue to seek medical insurance coverage through the medical assistance program. (Notes of testimony pp. 13-18.) (Findings of fact, conclusions of law and recommendation of the domestic relations hearing officer, 10/22/01, p. 2.)

The hearing officer increased Father's present duty of support to $1,984 per month ($1,784 for current support

and $200 for arrears) effective April 25, 2001. Father filed timely exceptions. After argument on March 18, 2002, this court dismissed Father's exceptions. Father filed the instant appeal. Father thereafter filed a statement of matters complained of.

Exception 1.A. provides that the hearing officer's findings of fact fail to indicate that, though eligible for Social Security Income, Heather has been denied said benefits due to the child support she receives and has received for approximately 25 years. The exception goes on to provide: "Because of adult dependant's ineligibility status, adult dependant has lost all federally funded benefits that go hand and hand with the disability income."

In fact, the following is clearly stated in the middle of the first full paragraph of page 2 of the findings of fact, conclusions of law and recommendation of the domestic relations hearing officer in the instant case: "According to the plaintiff, the child's SSI benefits were suspended due to the amount of support received from the defendant. The statement from the Social Security Administration corroborates this account." (Notes of testimony, exhibit D-1.) Mother testified to the same at the subject hearing. (Notes of testimony pp. 5-6.) The court does not know to what Father is referring in exception 1.A. as Heather's loss of "federally funded benefits that go hand and hand with the disability income." There was no testimony at the August 29, 2001 hearing regarding the loss of any of Heather's benefits, other than the suspension of her SSI benefits. For the above reasons, exception 1.A. is dismissed.

Exception 1.B. provides that the hearing officer's findings of fact indicate that Heather's condition worsened,

forcing a new order relative to medical bills and insurance without evidence of additional needs presented. Further, the exception provides that Mother admitted on the record that "the Medicare insurance provided for the first 31 years of dependant's life has been adequate to cover her medical expenses." Mother clearly testified on the record of the August 29, 2001 hearing that Heather's condition has worsened. The hearing officer asked Mother in what respect Heather's condition worsened. Mother specifically testified how Heather's condition worsened by, inter alia, referring to the doctors' reports (Notes of testimony, exhibit P-1), which clearly and specifically evidenced Heather's additional needs and expenses not covered by medical assistance. (Notes of testimony p. 5.) With regard to Father's assertion that Mother admitted on the record that medical assistance insurance has been adequate to cover Heather's medical expenses, the court finds no such admission. To the contrary, Mother stated that necessary medical specialists (as substantiated in Dr. Overholt's report) do not accept medical assistance. (Notes of testimony pp. 6-7; exhibit P-1.) Therefore, exception 1.B. is dismissed.

Exception 1.C. provides that the hearing officer's findings of fact indicate that Mother presented evidence of "extraordinary expenses" incurred on a monthly basis for Heather's care, but none were presented. Father asserts all expenses, but for basic care items, were covered in whole or part by Medicare or Medicaid insurance and should remain the primary coverage for Heather's medical needs.

In fact, the last sentence of the first full paragraph of page 2 of the findings of fact, conclusions of law and

recommendation of the domestic relations hearing officer in the instant case provides as follows: "Plaintiff now asks for the order to be modified giving due consideration to the lack of SSI income and the extraordinary expenses incurred by her on a monthly basis for the care of the child." The hearing officer there stated why Mother filed the subject petition for modifcation. The hearing officer was not, as Father asserts, making any statement regarding evidence or proof for modification. However, clear and specific evidence of such "extraordinary expenses" for Heather's care was put on the record of the subject hearing when the hearing officer asked Mother in what respect Heather's condition worsened. Mother testified how Heather's condition worsened by, inter alia, referring to the doctors' reports (Notes of testimony, exhibit P-1), which clearly and specifically evidenced Heather's additional needs and expenses not covered by medical assistance. (Notes of testimony p. 5.) Therefore, exception 1.C. is dismissed.

Exception 1.D. alleges that the hearing officer's findings of fact indicate that Father's proposal to reduce support payments is in part based on Heather's ability to receive Medicare or Medicaid insurance proceeds. Father asserts that the hearing officer failed to indicate that Heather continues and will continue to obtain such benefits despite Father's "income proposals for reduction." The hearing officer clearly considered this fact as evidenced by her references to Heather's current "Medicare/Medicaid program" benefits, inter alia, in the final paragraph on page 2 of the findings of fact, conclusions of law and recommendation of the domestic relations

hearing officer in this case. Therefore, exception 1.D. is dismissed.

Exception 1.E. provides that the hearing officer's findings of fact indicate that no challenges were raised regarding Father's income, but Father indicated that his location and other household dependant children should be a factor in the support calculation. To the contrary, a review of the transcript of the August 29, 2001 hearing reveals no such indication by Father. Therefore, exception 1.E. is dismissed.

Exception 1.F. provides: "Hearing officer bases her ruling on unreimbursed medical expenses from Dr. McCabe and Dr. Overholt's records on plaintiff Mother's testimony, however, plaintiff presented no evidence that she has attempted to obtain said medical services or that said services are in fact non-reimbursable." To the contrary, Mother testified to this very matter at the subject hearing. Clear and specific evidence of such "extraordinary expenses" for Heather's care was put on the record when the hearing officer asked Mother in what respect Heather's condition worsened. Mother testified how Heather's condition worsened by, inter alia, referring to the doctors' reports (Notes of testimony, exhibit P-1), which clearly and specifically evidenced Heather's additional needs and expenses not covered by medical assistance. (Notes of testimony p. 5.) Therefore, exception 1.F. is dismissed.

Exception 1.G. provides that: "Hearing officer states that defendant's proposal that adult dependant's basic necessity should be supplemented by federal funding that is specifically provided for 'special needs' adults." Fur-

ther, Father, inter alia asserts that the hearing officer indicates that this type of government supplement is an abuse of the system, but mother presented bills of only approximately $283 for 2000-2001 and received benefits in excess of $18,000 of "child" support. At the August 29, 2001 hearing, the hearing officer spoke of a number of other bills for medical expenses for 1999 and 2000 sent by certified mail to Father for payment and returned to domestic relations unsigned. The court also responds to this exception with Mother's response at the hearing regarding the worsening of Heather's condition. Mother specifically testified how Heather's condition worsened by, inter alia, referring to the doctors' reports (Notes of testimony, exhibit P-1), which clearly and specifically evidenced Heather's additional needs and expenses not covered by medical assistance. (Notes of testimony p. 5.) Therefore, exception 1.G. is dismissed.

Exception 1.H. provides that the hearing officer states that Father failed to obtain medical insurance for Heather, however Father attempted to do the same and Mother has not, as of the date of the filing, supplied any information to Father relative to Heather's disability or information that must be submitted to insurance carrier for coverage assessment. A review of the record of the subject hearing reveals no testimony regarding any alleged lack of cooperation on Mother's part with regard to Father's obligation to obtain private medical insurance for Heather. Father admitted at the hearing that after initially contacting his medical insurer in 1999, he never followed through with the required paperwork and the matter simply "fell through the cracks." (Notes of testimony pp. 8-9.) (Findings of fact, conclusions of law and

recommendation of domestic relations hearing officer, 10/22/01, p. 3.) Therefore, exception 1.H. is dismissed.

Exception 2.A. provides that "the hearing officer's determination discriminates against familial status because if the parents had been married, even with a large income, adult dependant would be entitled to all federal benefits no matter what the parental income amount." Father cites *Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265 (1995), which is not dispositive. *Curtis* involved the requirement that separated, divorced or unmarried parents provide post-secondary education support to adult children. The court found that concept violated the Equal Protection Clause of the 14th Amendment. The court in *Pellish v. Gerhart*, 701 A.2d 594 (Pa. Super. 1997), however, declined to extend the *Curtis* holding beyond that of post-secondary educational expenses. Therefore, exception 2.A. is dismissed.

The court will here address together exceptions 2.B., C., and D., after stating the same. Exception 2.B. provides that the hearing officer is "at odds" with Father's proposal to allow receipt of all federal funds with a trust. Exception 2.C. provides that the hearing officer utilizes 23 Pa.C.S. 1910.16-6 as a basis in denying Father's proposal, "however the very reasoning and basis for DPW and SSI are different and said comparison does not comport with the purposes of SSI." Exception 2.D. provides that the hearing officer deviates from the support guidelines, when such deviation is not supported by substantial evidence and constitutes a punishment aimed at Father, rather than seeking the best interest of Heather which would best be served through a "special needs trust" and by obtaining full government benefits "specifically de-

signed so that parents of special needs adults need not bear the burden of such support for the entire adult life of their children."

"It is well-settled that a court has discretion to enter a support award that is outside the guidelines after considering the unique needs of the parties. The court must, however, place reasons on the record for doing so." *Crawford v. Crawford,* 429 Pa. Super. 540, 557, 633 A.2d 155, 163 (1993). (Citing *Lesko v. Lesko,* 392 Pa. Super. 240, 572 A.2d 780 (1990).) The hearing officer was fully cognizant of and did the same in this case, as evidenced by the following:

"I am at odds with why a parent, with such economic means as that of the defendant herein, would suggest that the support of his child should in any way be underwritten by federal tax dollars. There is no contention in this record by the defendant that he cannot meet his obligation of support as dictated by the support guidelines. The defendant's monthly income is sufficient to not only provide support to the plaintiff to care for Heather, but also to generously support his intact family. The support guidelines offer no basis for the defendant's proposal that an order be fashioned in such a manner so as to reinstate Heather's eligibility for governmental assistance. Indeed, the guidelines seek just the opposite result by requiring obligors to pay toward the support of a child so that government assistance may be relieved. Compare 23 Pa.C.S. Rule 1910.16-6 (child care subsidy provided by D.P.W. should not be used to reduce child care expenses between parties to the extent obligor has financial resources to contribute actual costs of child care). Therefore, I decline to recommend the defendant's proposal and find

that an order of support should be entered pursuant to the support guidelines.

"Pursuant to Rule 1910.16-5, a deviation may be made to the order of support indicated by the guidelines if one or more of the items detailed therein is found by the trier of fact as warranting such a deviation. I find that the unusual needs of the child Heather and the plaintiff's unusual fixed obligations with regard to her care, together with the substantial income of the defendant, and the medical expenses not covered by insurance warrant an upward deviation from the indicated guideline amount. I recommend that defendant pay an additional $200 per month for a total support order of $1,784." (Findings of fact, conclusions of law and recommendation of the domestic relations hearing officer, 10/22/01, pp. 3-4.)

In *Crawford,* the court held that a dependant adult child was entitled to child support from her father even though she was otherwise entitled to federal benefits; society was not required to step in and care for the adult dependant child whose parent was capable of providing support. For the above reasons, exceptions 2.B., C., and D. are dismissed.

Exception 2.E. alleges that by not capping out of pocket expenses and not utilizing the deductible for unreimbursed medical expenses, the hearing officer provides no protection for Father with respect to reviewing potential expenditures, and further does not provide a safe harbor if no medical insurer will insure Heather. The hearing officer reasoned as follows:

Due to the defendant's failure to comply with the order of 3-22-99 with regard to obtaining medical insur-

ance, I find that he should be responsible for 100 percent of those medical expenses not paid for by Medicare/Medicaid and that no cap be placed on this liability. There should be no deductible that must first be met by the plaintiff with regard to the plaintiff's unreimbursed medical expenses, again due to the child's exceptional needs for items not paid for by insurance and the defendant's failure to fund private insurance coverage. Should the defendant obtain medical insurance for the child, then the $250 annual deductible for unreimbursed medical expenses may be reinstated." (Findings of fact, conclusions of law and recommendation of the domestic relations hearing officer, 10/22/01, p. 4.)

Father presented no evidence at the subject hearing that would warrant capping out of pocket expenses and utilizing the deductible for unreimbursed medical expenses at this point. For the above reasons, exception 2.E. is dismissed.

Exception 2.F. provides that the hearing officer fails to consider the coverage that Medicare provides. The hearing officer did in fact consider the coverage Medicare/Medicaid provides to Heather. The hearing officer clearly references Heather's current "Medicare/Medicaid program" benefits, inter alia, in the final paragraph on page 2 of the findings of fact, conclusions of law and recommendation of the domestic relations hearing officer in this case. Therefore, exception 2.F. is dismissed.

The court will here address Father's statement of matters complained of. First, Father asks whether the trial court made an error of law by failing to rule that the Pennsylvania child support guidelines were unconsti-

tutionally applied to Father and thus, "violated due process and equal protection regarding his fundamental right to familial status." The court made no such error of law. Father cites *Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265 (1995), which is not dispositive. *Curtis* involved the requirement that separated, divorced or unmarried parents provide post-secondary education support to adult children. The court found that concept violated the Equal Protection Clause of the 14th Amendment. The court in *Pellish v. Gerhart,* 701 A.2d 594 (Pa. Super. 1997), however, declined to extend the *Curtis* holding beyond that of post-secondary educational expenses.

The court will here respond together to Father's second and third matters after stating both. In his second matter, Father asks whether the trial court abused its discretion by failing to consider Heather's unique age, disability and circumstances by failing to modify Father's support obligation to include a special needs trust to maximize Social Security disability benefits. Third, Father asks whether the trial court abused its discretion by failing to consider the unique age, disability and circumstances of the parents in this case by failing to modify Father's support obligation to include a special needs trust so Heather can maximize receipt of Social Security disability benefits and be financially protected when her parents are no longer able to provide for her. The court did not so abuse its discretion in either matter. In fact, "[i]t is well-settled that a court has discretion to enter a support award that is outside the guidelines after considering the unique needs of the parties. The court must, however, place reasons on the record for doing so."

*Crawford v. Crawford,* 429 Pa. Super. 540, 557, 633 A.2d 155, 163 (1993) (citing *Lesko v. Lesko,* 392 Pa. Super. 240, 572 A.2d 780 (1990)). The hearing officer was fully cognizant of and did the same in this case, as evidenced in the following paragraph.

The hearing officer pointed out that there is no contention in this record that Father cannot meet his obligation as dictated by the support guidelines. The support guidelines provide no basis for Father's proposal that an order be fashioned in a manner so as to reinstate Heather's eligibility for governmental assistance. The support guidelines seek the opposite result by requiring obligors to pay toward the support of a child so government assistance may be relieved. Compare 23 Pa.C.S. Rule 1910.16-6 (child care subsidy provided by D.P.W. should not be used to reduce child care expenses between parties to the extent obligor has financial resources to contribute actual costs of child care). Thus, the hearing officer declined to recommend Father's proposal and found that a support order should be entered pursuant to the support guidelines. Pursuant to Pa.C.S. Rule 1910.16-5, a deviation may be made to the support order indicated by the guidelines if one or more of the items detailed therein is found by the trier of fact as warranting such a deviation. The hearing officer found that Heather's unusual needs and Mother's unusual fixed obligations regarding Heather's care, together with Father's substantial income, and Heather's medical expenses not covered by insurance warrant an upward deviation from the indicated guideline amount. The hearing officer thus recommended that Father pay an additional $200 per month for a total support order of $1,784. (Findings of fact,

conclusions of law and recommendation of the domestic relations hearing officer, 10/22/01, pp. 3-4.)

In *Crawford,* the court held that a dependant adult child was entitled to child support from her father even though she was otherwise entitled to federal benefits; society was not required to step in and care for the adult dependant child whose parent was capable of providing support.

Based on all the evidence presented including Heather's present needs and Father's present ability to pay, Heather is entitled to child support benefits from Father today. Should either Heather's needs or Father's ability to pay change in the future, the same would have to be addressed at that time.

Fourth, Father asks whether the trial court abused its discretion by ordering Father to provide medical coverage for Heather when medical coverage is available through Medicare and will be and has been adequate to cover Heather's medical needs for approximately 30 years. The court did not so abuse its discretion. The court responds hereto with Mother's response at the hearing regarding the worsening of Heather's condition. Mother specifically testified how Heather's condition worsened by, inter alia, referring to the doctors' reports (Notes of testimony, exhibit P-1), which clearly and specifically evidenced Heather's additional needs and expenses not covered by medical assistance. (Notes of testimony p. 5.)

For the foregoing reasons, it is respectfully requested that the order entered on March 28, 2002 be affirmed and Father's appeal denied.