J-A14020-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANDREW KUNDRATIC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant/Cross-Appellee | |
| v. | |
| SOPHIA KUNDRATIC | |
| Appellee/Cross-Appellant | No. 1920 MDA 2013 |
| | No. 1998 MDA 2013 |

Appeal from the Order October 2, 2013
In the Court of Common Pleas of Luzerne County
Domestic Relations at No(s): 946-2006

BEFORE:  FORD ELLIOTT, P.J.E., OLSON and STRASSBURGER,[*] JJ.

MEMORANDUM BY OLSON, J.:               **FILED SEPTEMBER 08, 2014**

Appellant, Andrew Kundratic, appeals from the order entered on October 2, 2013.  Sophia Kundratic (hereinafter "Ms. Kundratic") filed a cross-appeal from this same order.  We affirm in part, vacate in part, and remand.

Appellant and Ms. Kundratic married on May 9, 1992 and had one child during the course of their marriage.  On May 2, 2006, Appellant instituted divorce proceedings against Ms. Kundratic.  Shortly thereafter, Ms. Kundratic filed a complaint for child and spousal support.  On October 1, 2007, the trial court adopted the parties' support agreement as an order of court, directing that Appellant pay "$3,100.00 per month, allocated $1,500.00 for and toward the support of one minor child[,] $1,364.00 [for] spousal support[,]

_____
[*]  Retired Senior Judge assigned to the Superior Court.

and $236.00 as [Appellant's] *pro rata* contribution for health insurance."[1] Trial Court Order, 10/1/07, at 1-2.

On May 19, 2008, Appellant filed a petition to modify the October 1, 2007 support order. As Appellant claimed, he was entitled to a reduction in his support obligations because his employer had reduced his "*per diem* reimbursement for living expenses." Appellant's Petition to Modify, 5/19/08, at 1. On March 24, 2009 and April 13, 2009, a hearing on Appellant's modification petition occurred before a hearing officer. At the conclusion of the hearing, the hearing officer determined that Appellant's year-2008 gross annual wages were $109,369.72, Appellant's year-2008 gross *per diem* allowance was $40,067.00, and Appellant's year-2008 "mileage, meals[,] and entertainment" reimbursement was $12,203.00. Hearing Officer's Report and Recommendation, 8/20/09, at 9. With respect to Appellant's petition to modify the support order, the hearing officer determined that Appellant had failed to demonstrate that a material and substantial change in circumstances had occurred since the entry of the original support order. *Id.* at 9-10. Therefore, the hearing officer recommended that the trial court deny Appellant's petition to modify the support order. *Id.* at 11.

Appellant filed exceptions to the hearing officer's August 20, 2009 report and recommendation. On December 30, 2009, the trial court denied

---

[1] Although the original support order was dated September 27, 2007, the order was entered on October 1, 2007.

2

Appellant's exceptions and adopted the hearing officer's report and recommendation as an order of court. Trial Court Order, 12/30/09, at 1.

Approximately two-and-a-half years later, the trial court entered a modified support order in the case. Specifically, on May 18, 2011, the trial court entered an order terminating Appellant's obligation to pay the $236.00 per month for health insurance. Trial Court Order, 5/18/11, at 1.

Appellant and Ms. Kundratic filed the instant cross-petitions to modify the support order in 2011 – or, over three years ago. Appellant filed his petition to modify the support order on July 11, 2011. Within Appellant's petition, Appellant claimed that his income had decreased since the entry of the last support order. Therefore, Appellant requested that the trial court reduce his support obligations. Appellant's Petition to Modify, 7/11/11, at 1-2. Ms. Kundratic filed her cross-petition to modify the support order on July 29, 2011. Ms. Kundratic prayed for an increase in Appellant's child and spousal support obligations because she no longer had health insurance coverage and because she believed that Appellant's income had increased since the entry of the last support order.[2] Ms. Kundratic's Petition to Modify, 7/29/11, at 1-2.

---

[2] The Pennsylvania Rules of Civil Procedure establish two competing procedures for support proceedings. According to Rule 1910.10(a), "[t]he [support] action shall proceed as prescribed by Rule 1910.11 unless the court by local rule adopts the alternative hearing procedure of Rule 1910.12." Pa.R.C.P. 1910.10(a). Luzerne County has adopted the procedure delineated in Rule 1910.12. *See* Pa.R.C.P. 1910.10 note.

In August 2011, one or both of the parties appeared at an office conference before a conference officer and the conference officer rendered his support recommendations.[3]  On August 29, 2011, the trial court entered an interim order, wherein the trial court adopted the conference officer's recommendations as an interim order of court.  Interim Order, 8/29/11, at 1-2.  The interim order declared that Ms. Kundratic's net monthly income was determined to be $1,216.84 and that Appellant's net monthly income was determined to be $8,161.54.  Interim Order, 8/29/11, at 1-2; **see also** Pa.R.C.P. 1910.12(b)(1) and (2).  Based upon these determinations, the trial court ordered Appellant to pay $1,680.00 per month in spousal support and $1,340.00 per month in child support, for a total support obligation of $3,022.00 per month.  Interim Order, 8/29/11, at 1-2.

Following entry of the interim support order, Appellant filed a written request for a support hearing before a hearing officer.  On September 15, 2011, a "request for scheduling of [a] hearing" was entered on the docket, declaring that the support hearing would be scheduled for "the next available date."  Docket Entry, 9/15/11, at 1.  The hearing was then scheduled, continued, and rescheduled multiple times during the ensuing year.  In the interim, the parties' child reached the age of emancipation.  Therefore, by order entered September 28, 2012, the trial court modified

---

[3] There is no record of whether both parties appeared at the office conference.  However, the case proceeded as though one of the parties failed to attend the conference.  **See** Pa.R.C.P. 1910.12(b)(2).

the prior support order and terminated Appellant's obligation to provide child support. Trial Court Order, 9/28/12, at 1.

On October 22, 2012, the support hearing was finally convened before the hearing officer. The hearing officer explained the evidence that was presented during the hearing, as well as the conclusions that she generated from the evidence:

> [Appellant and Ms. Kundratic both] reside in Luzerne County, Pennsylvania. The parties were married on May 9, 1992 [and the parties had one child during the course of the marriage. The child] reached the age of majority [in 2012].
>
> [On May 2, 2006, Appellant filed a complaint in divorce against Ms. Kundratic, seeking a decree in divorce and an order equitably dividing the marital property. Complaint in Divorce, 5/2/06, at 1-4. At the time of the October 22, 2012 support hearing, the divorce and equitable distribution matter had proceeded in the following manner: after a number of master's hearings, the trial court entered its divorce decree on September 21, 2011; the decree stated that Appellant and Ms. Kundratic were divorced and that the trial court was incorporating the master's equitable distribution reports and recommendations into the decree; Appellant filed a notice of appeal from the divorce decree and raised a number of claims on appeal, including that the trial court erred in valuing the marital residence; and, at the time of the October 22, 2012 support hearing, Appellant's appeal from the divorce decree was still pending before the Superior Court.[4]]

---

[4] We note that, on October 22, 2012, this Court affirmed in part and vacated in part the equitable distribution award. We then remanded the case to the trial court, so that the trial court could "consider all of the evidence of record . . . and determine the fair market value [of] the marital residence for equitable distribution purposes." *Kundratic v. Kundratic*, 62 A.3d 463 (Pa. Super. 2012) (unpublished memorandum) at 4. The trial court rendered its decision on October 1, 2013 and Appellant again appealed the equitable distribution award to this Court. Appellant's appeal of the equitable distribution award was decided by this Court in a memorandum filed on July

[During the October 22, 2012 support hearing, Appellant claimed] that his income decreased in 2011 and that he was laid off from his employment as of January 1, 2012. He ask[ed] that his support be recalculated and that his actual 2011 and 2012 income be used . . . for computing his support obligations.

[Appellant] also claim[ed] that [Ms. Kundratic,] who has been unemployed since 2009[,] be assigned an earning capacity equal to her earning capacity in 2009. [Appellant claimed] that [Ms. Kundratic] failed to mitigate her [] income [loss after her employment was terminated in 2009].

[Ms. Kundratic] claim[ed] that [Appellant] was laid off for cause or[,] in the alternative[,] that he [] failed to mitigate his [] income [loss] since his 2012 job lay off. She [requested] that [Appellant] be assigned an earning capacity equal to his 2011 earnings.

The parties' only child lives with [Ms. Kundratic] and was eligible for support until her emancipation [in September] 2012.

The parties were separated but married until September 20, [2011]. By . . . [d]ecree entered on September 21, [2011], the parties were divorced from the bonds of marriage. [Appellant,] however, appealed the economic issues of the divorce[. As such, the hearing officer concluded that Ms. Kundratic] has a right to [receive alimony *pendente lite* ("APL") until the economic issues are resolved].

[At the time of the October 22, 2012 support hearing, Appellant was] 51 years old and [possessed] an associate['s] decree in [c]omputer [s]cience with significant [on-the-job] career training. . . .

On December 30, 2009, an order was entered affirming [a] [r]eport and [r]ecommendation [of] the [h]earing [o]fficer.

---

9, 2014. On or about August 12, 2014, Appellant filed a petition for allowance of appeal with our Supreme Court which, as of the date of this memorandum, was still pending.

[The order] denied [Appellant's] request for a decrease in support and determined that [Appellant's] 2008 gross annual wages were $109,369.72, that his gross *per diem* allowance was $40,067.00[,] and that his mileage, meals[,] and entertainment reimbursement totaled $12,203.00. [Appellant's] 2008 gross annual income from his employer was [thus] determined to be $161,639.72.

. . .

[Appellant's] 2011 [i]ncome [t]ax [r]eturn lists an annual wage of $89,539.00. In addition[, Appellant's] attorney relayed to the [h]earing [o]fficer that [Appellant] had received a [tax-free] *per diem* allowance of $40,067.00 and $12,203.00 for mileage, meals[,] and entertainment. His total 2011 annual income from his employer equaled $141,809.00.

[As the hearing officer concluded, Appellant] proved that a material and substantial change in circumstances [] occurred[,] which warrant[ed] a recalculation of his support obligations effective July 21, 2011. [Specifically, a] review of [Appellant's] 2011 [i]ncome [t]ax [r]eturn [] and the information relayed by [Appellant's] attorney to the [h]earing [o]fficer indicate that [Appellant] ha[d] a gross annual income of $144,757.00 [in 2011]. After appropriate deductions of $13,554.00[, Appellant] ha[d a 2011] net annual income of $131,193.00. Pursuant to [Pa.R.C.P.] 1910.16-2(a)(1) [and] (c), in 2011[, Appellant] ha[d a [2011] net monthly income of $10,929.58.

[Appellant claimed that, on December 31, 2011,] he was laid off from his employment and [he] immediately applied for unemployment compensation. [During the support hearing, Appellant introduced] into evidence [] his [b]enefit [d]etermination from [the] New Jersey Department of Labor and Unemployment Insurance Office to substantiate his testimony that he is receiving [$611.00] gross per week or $2,267.30 gross per month. According to the [m]ember [d]ata [i]ncome [s]creen on PACSES, for [Appellant], he received additional compensation from his employer during the first quarter of 2012 that totaled a gross amount of $3,891.00 or $324.00 gross [per] month. Based on the above, [Appellant's] total gross monthly income is

7

$2,971.72. After appropriate deductions pursuant to [Pa.R.C.P.] 1910.16-2(a)(6) and (c)[, Appellant's] 2012 net monthly income is $2,524.16.

[Ms. Kundratic] allege[d] that [Appellant] lost his job for cause or[,] in the alternative, [that] he [had] not mitigated his [] income [loss. Ms. Kundratic requested that the hearing officer assign Appellant] an earning capacity equal to his 2011 income.

[Appellant] testified that he was employed as a software consultant by Quorum Consulting for 10 years and[, beginning in 2005, Quorum Consulting assigned Appellant to work in a New York State bank. Appellant] testified that his termination on December 2011 was a surprise. [The evidence demonstrates] that Quorum had a one year contract with the [b]ank that ended [on] March 31, 2012[,] but [the contract provisions declared that the contract] could be terminated earlier pursuant to a separate agreement. [Appellant] allege[d] that he was laid off without cause by Quorum and that the receipt of unemployment compensation proves [that he was laid off without cause]. Although case law [holds] that an official action by an agency [is not] binding on the [c]ourt[,] it is the obligation of the challenger to prove it was otherwise. . . . [As the hearing officer concluded, Ms. Kundratic] did not meet this burden. [Appellant] was [cross-examined] as to his software training and [as to whether his training] was current. No one from [Appellant's] place of employment testified nor were any documents from the employer's [h]uman [r]esources [d]epartment submitted to substantiate [Ms. Kundratic's] claim that [Appellant] was terminated for cause.

[Ms. Kundratic] also claim[ed] that [Appellant] ha[d] not mitigated his [wage loss] and that work is available for [Appellant]. Again, [the hearing officer concluded that Ms. Kundratic] failed to prove this allegation. [Appellant] was [cross-examined] by [Ms. Kundratic] as to [the efforts Appellant undertook to find employment,] but no evidence was submitted to substantiate that work was available to [Appellant's] unique skill set. As of [the October 22, 2012 hearing, Appellant had] only been unemployed [for ten] months. The [h]earing [o]fficer [concluded] that

8

[Appellant's] lack of success [at finding employment was] due to the economic conditions in Northeast Pennsylvania, not [to a] lack of trying by [Appellant].

[The hearing officer concluded that, in 2012,] Appellant ha[d] an income equal to the amount of unemployment compensation he [was] receiving plus the additional income of $3,891.00. [Appellant's 2012] net monthly income [was] $2,524.16 pursuant to [Pa.R.C.P.] 1910.16-2(a)(6) and (c).

[At the time of the October 22, 2012 hearing, Ms. Kundratic was] 45 years old, and [] a high school graduate. [Ms. Kundratic] is attractive, articulate[,] and has no physical disabilities nor does she have any child care responsibilities. [Ms. Kundratic] testified that she worked at Lord & Taylor [department store] in a non-managerial [full-time] job for [17] years. Her pay increased from $14.00 [per] hour to $37.00 [per] hour over the course of her employment. She was laid off in January 2009 and applied for and collected unemployment benefits through 2009. She testified that she [had not] worked full time since her lay-off. She [testified] that she [] looked for [full-time] work at K-Mart, Wal-Mart[,] and Wegman's. She even reapplied to Lord & Taylor but was told that all [non-managerial] jobs were part time. [Ms. Kundratic] testified that she has been working at Bath & Body Works since 2011. She entered her 2011 [i]ncome [t]ax [r]eturn to substantiate her income. [At the time of the October 22, 2012 hearing, Ms. Kundratic] receive[d] $7.62 [per] hour and work[ed] about 24 hours [per] week. She testified that Bath [& Body Works was] unable to give her more hours.

[The hearing officer concluded that, although Ms. Kundratic had] been diligent in applying for employment, a more discipline[d] approach [was] required to demonstrate that [Ms. Kundratic was] trying to mitigate her [] income [loss]. [At the time of the hearing, Ms. Kundratic had] been unemployed for four years [and Ms. Kundratic claimed that] her only sources of income [were] her spousal support and her wages from [Bath & Body Works]. When it was clear to [Ms. Kundratic] that only [part-time] work was available to her based on her credentials, she should have developed a plan to improve her chances, perhaps considering additional

9

schooling, training[,] or at [] least taking on two [part-time] jobs.

[The hearing officer concluded that Ms. Kundratic] failed to prove that she [] attempted to mitigate her lost wages since her layoff in 2009. Pursuant to [Pa.R.C.P.] 1910.16-2(d)(4), [Ms. Kundratic] [was] given an earning capacity equal to a [full-time] minimum wage job[, which is] $15,080.00 [per] year[,] or $1,256.67 [per] month. After appropriate deductions[, Ms. Kundratic's] net monthly income for 2011 and 2012 [was] $1,121.45. . . .

In calculating support for the period beginning July 21, 2011 through December 31, 2011, [the hearing officer concluded that Appellant's] net monthly income [was] $10,929.58 and [Ms. Kundratic's] net monthly income [was] $1,121.45. The amount of child support and spousal support [was] determined in accordance with the support guidelines which consist of the guidelines expressed as the child support schedule set forth in [Pa.R.C.P.] 1910.16-3, the formula in Rule 1910.16-4[,] and the operation of the guidelines as set forth in these rules. . . .

In calculating the support for the period beginning January 1, 2012 through September [26], 2012[, the hearing officer concluded that Appellant's] net monthly income [was] $2,524.16 and [Ms. Kundratic's] net monthly income [was] $1,121.45. The amount of child support and spousal support [was] determined in accordance with the support guidelines which consist of the guidelines expressed as the child support schedule set forth in [Pa.R.C.P.] 1910.16-3, the formula set forth in Rule 1910.16-4[,] and the operation of the guidelines as set forth in these rules. . . .

In calculating the support for the period beginning September [27], 2012 forward[, Appellant's] net monthly income [was] placed at $2,524.16 and [Ms. Kundratic's] net monthly income [was] set at $1,121.45. The amount of spousal support [was] determined in accordance with the support guidelines which consist of the guidelines expressed as the [] support schedule set forth in [Pa.R.C.P.] 1910.16-3, the formula set forth in Rule 1910.16-4[,] and the operation of the guidelines as set forth in these rules. . . .

> [Ms. Kundratic] lives in the marital home and she is responsible for the mortgage payment, the real estate taxes, the school taxes[,] and [the homeowner's] insurance. She is responsible for a total of $1,761.61 [per] month for the items listed above.  Since the house expenses exceed 25% of [Ms. Kundratic's] income, taking into account the spousal support/APL [and] child support of this recommendation, [the hearing officer determined that Ms. Kundratic] [was] entitled to a contribution from [Appellant] of up to 50% of the excess amount as part of her total award.
>
> [The hearing officer concluded that, p]ursuant to [Pa.R.C.P.] 1910.16-6(e)[, Ms. Kundratic] [was] entitled to a mortgage deviation.  In applying the mortgage deviation[,] the total amount of expenses paid by [Ms. Kundratic] [was] $1,761.61.   Utilizing the formula set forth [in] the [g]uidelines, [the hearing officer determined that Ms. Kundratic was entitled to] receive a contribution from [Appellant] of $248.07 from July 21, 2011 through December 31, 2011.   From January 1, 2012 through September [26], 2012, [Ms. Kundratic] [was to] receive a contribution from [Appellant] of $638.65.  From September [27], 2012 forward, [Ms. Kundratic] [was to] receive a contribution from [Appellant] of $670.49 [per] month.

Hearing Officer's Report and Recommendation, 12/13/12, at 6-9; Hearing Officer's Amended Recommendation, 12/14/12, at 10-11.

On January 3, 2013, the trial court entered an interim order that was consistent with the hearing officer's amended recommendation.[5]  Amended Recommendation and Interim Order, 1/3/13, at 1-4; *see* Pa.R.C.P. 1910.12(e).  In relevant part, the interim order read:

1. From July 21, 2011 through December 31, 2011:

---

[5] The interim order was dated January 2, 2013.

11

[Appellant] is obligated to pay $1,425.71 [per] month for the support of the minor child, $2,514.73 [per] month for [the] support of the spouse and $248.07 [per] month towards the mortgage expenses of the marital home.

. . .

2. From January 1, 2012 through September 26, 2012:

[Appellant] is obligated to pay $564.21 [per] month for the support of the minor child, $251.53 [per] month for [the] support of the spouse and $638.65 [per] month towards the mortgage expenses of the marital home until September 20, 2012. From September 21, 2012, [Appellant] is obligated to pay $564.29 [per] month for the support of the minor child, $251.53 [per] month as APL and $638.65 [per] month towards the mortgage expenses of the marital home.

. . .

3. From September 27, 2012 forward:

[Appellant] is obligated to pay $561.08 [per] month for APL and $670.49 [per] month towards the mortgage expenses of the marital home. . . .

Amended Recommendation and Interim Order, 1/3/13, at 1-2.

On January 2, 2013, Appellant filed exceptions to the hearing officer's report and to the trial court's interim order.[6] On January 16, 2013, Ms.

---

[6] Appellant raised the following exceptions to the trial court:

1. The calculation of [Appellant's] net monthly income was incorrect.

2. The hearing officer failed to give any consideration to [Ms. Kundratic's] erroneous tax returns, which had been used in order to calculate [Ms. Kundratic's] net monthly income in previous years.

12

Kundratic filed her own exceptions to the hearing officer's report and to the

trial court's order.[7]

_____

3. Inclusion of mortgage deviation was improper.

4. The calculation of [Ms. Kundratic's] net monthly income was incorrect.

5. The hearing officer failed to terminate alimony *pendente lite*, effective July 10, 2012, the date litigation concluded on the divorce appeal.

6. The hearing officer failed to consider the duration of the marriage in determining the duration of the award for alimony *pendente lite*.

Appellant's Exceptions, 1/2/13, at 1 (some internal capitalization omitted).

[7] Ms. Kundratic raised the following exceptions to the trial court:

1. The [hearing officer] erred in finding that [Ms. Kundratic] has an earning capacity when she has been actively seeking employment after her unemployment benefits ran out.

2. The [hearing officer] erred in finding that [Ms. Kundratic] has an earning capacity when she has attempted to mitigate her circumstances with no results in the economy in Luzerne County with unemployment over 9%.

3. The [hearing officer] erred in finding that [Appellant] mitigated his circumstances and setting his income at his unemployment compensation benefits amount.

4. The [hearing officer] erred in finding that [Appellant] actively sought employment when he testified that he has not sent any resumes out and has not posted any updated resumes and has only contacted two friends.

5. The [hearing officer] erred in finding that [Appellant's] termination wasn't willful.

On August 7, 2013, the trial court heard oral argument on the parties' exceptions. By order entered October 2, 2013, the trial court denied Ms. Kundratic's exceptions in their entirety and granted in part and denied in part Appellant's exceptions.[8] Trial Court Order, 10/2/13, at 1. Specifically, the trial court denied all but one of Appellant's exceptions; it ordered that Appellant's exceptions were granted only to the extent that "[t]he spousal support/APL is terminated effective February 1, 2013." *Id.*

Appellant and Ms. Kundratic filed timely notices of appeal from the trial court's order. Appellant raises the following claims on appeal:[9]

> [1.] Whether the trial court erred by failing to address the calculation of [Appellant's] net monthly income[?] To the extent that the trial court affirmed the calculation of the hearing [officer], it committed error.

---

> 6. The [hearing officer] erred in not finding that [Appellant] testified that he did not update his required skills in order to keep his job.

> 7. The [hearing officer] erred in setting [Appellant's] income at [unemployment compensation] level instead of keeping him at an earning capacity of his last job of $10,929[.00] net per month.

Ms. Kundratic's Exceptions, 1/16/13, at 1.

[8] **But see** Pa.R.C.P. 1910.12(h) ("If exceptions are filed, the interim order shall continue in effect. The court shall hear argument on the exceptions and **enter an appropriate final order substantially in the form set forth in Rule 1910.27(e)** within **sixty days** from the date of the filing of exceptions to the interim order. . . .").

[9] The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied and, within his Rule 1925(b) statement, Appellant listed the claims he currently raises on appeal.

[2.] Whether the trial [court] erred by failing to address the calculation of [Ms. Kundratic's] net monthly income[?] To the extent that the trial court affirmed the calculation of the hearing [officer], it committed error.

[3.] Whether the trial court erred by failing to consider [Ms. Kundratic's] erroneous tax returns, which had been used in order to calculate her net monthly income[?]

[4.] Whether the trial [court] erred by failing to address the inclusion of a mortgage deviation[?] To the extent that the trial court affirmed the hearing [officer's] inclusion of a mortgage deviation, it committed error.

[5.] Whether the trial court erred by not terminating alimony *pendente lite*, effective July 10, 2012, the date litigation concluded on the divorce appeal[?]

[6.] Whether the trial court erred by failing to consider the duration of the marriage in determining the duration of the award for alimony *pendente lite*[?]

Appellant's Brief at 3-8 (some internal capitalization and italicization omitted).

Within Ms. Kundratic's cross-appeal, Ms. Kundratic raises eight claims.[10]

[1.] Did the trial court err in deciding the exceptions without a record or transcripts of the hearing before the [hearing officer]?

[2.] Should [] Appellant's July 21, 2011 petition to modify the support order be dismissed due to a lack of a change in material circumstances?

---

[10] The trial court did not order Ms. Kundratic to file a Rule 1925(b) statement and Ms. Kundratic did not file a Rule 1925(b) statement in this case.

15

[3.] Should [Ms. Kundratic's] actual 2011 and 2012 income be used to determine support rather than an earning capacity?

[4.] Did the [trial court] err in terminating [Ms. Kundratic's] spousal support/APL effective February 1, 2013?

[5.] Was [Ms. Kundratic] eligible for a mortgage deviation?

[6.] Should [Appellant] be placed at an earning capacity rather than unemployment compensation?

[7.] Were the circumstances surrounding [] Appellant's lay-off voluntary?

[8.] Does [] Appellant have a duty to mitigate his circumstances after a lay-off from his company?

Ms. Kundratic's Brief at 13-14 (some internal capitalization omitted).[11]

We will first consider Appellant's claims and then we will consider Ms. Kundratic's claims.

As we have held:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

---

[11] For ease of discussion, we have re-numbered Ms. Kundratic's claims on appeal.

16

*Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007) (internal citations omitted).

"A [c]ourt may only modify an existing support award when the party requesting the modification shows a material and substantial change in circumstances since the [existing o]rder was entered." *Crawford v. Crawford*, 633 A.2d 155, 164 (Pa. Super. 1993) (internal quotations and citations omitted). "The change in circumstances must be 'permanent,' meaning it is irreversible and indefinite in duration." *Id.* Further, "[t]he most recent [support] order is the one that is pertinent to the determination of whether a change in circumstances has occurred." *Samii v. Samii*, 847 A.2d 691, 695 (Pa. Super. 2004).

"The burden of demonstrating a material and substantial change rests with the [requesting] party, and the determination of whether such change has occurred in the circumstances of the [requesting] party rests within the trial court's discretion." *Kimock v. Jones*, 47 A.3d 850, 855 (Pa. Super. 2012) (internal quotations and citations omitted). Moreover, although Pennsylvania Rule of Civil Procedure 1910.19(a) declares that a petition to modify a support order "shall specifically aver the material and substantial change in circumstances upon which the petition is based," Rule 1910.19(c) provides that, pursuant to a petition for modification, "the trier of fact may modify or terminate the existing support order in any appropriate manner based upon the evidence presented without regard to which party filed the

17

petition for modification." Pa.R.C.P. 1910.19(a) and (c); **_see also Brickus v. Dent_**, 5 A.3d 1281 (Pa. Super. 2010) (father filed a petition to decrease his support obligations; this Court held that the hearing officer had the authority to increase father's support obligation, even though mother had not even filed a cross-petition to modify the support order).

Appellant first claims that the trial court erred when it adopted the hearing officer's determination of Appellant's net monthly income. Appellant's Brief at 12. Specifically, Appellant claims that the calculation of his year-2011 net monthly income was incorrect because the calculation "attribut[ed] to [Appellant] income that [did] not exist" and because the trial court did not "apply[ certain] appropriate deductions." **_Id._** at 12-13. Appellant's claims are meritless.

According to Appellant, the hearing officer incorrectly attributed $52,203.00 to Appellant's year-2011 income. Appellant claims that the only evidence presented at the hearing was that Appellant's year-2011 income was $92,554.00 – and yet the hearing officer concluded that Appellant's year-2011 income was greater than $140,000.00. **_Id._**

As the hearing officer explained, it calculated Appellant's year-2011 income in the following manner:

> [Appellant's] 2011 [i]ncome [t]ax [r]eturn lists an annual wage of $89,539.00. In addition[, Appellant's] attorney relayed to the [h]earing [o]fficer that [Appellant] had received a [tax-free] *per diem* allowance of $40,067.00 and $12,203.00 for mileage, meals[,] and entertainment. His total 2011 annual income from his employer equaled

18

$141,809.00. . . . [When other sources of income are included, Appellant's year-2011] gross income [is] $144,757.00. After appropriate deductions of $13,554.00, [Appellant] has a net annual [year-2011] income of $131,193.00.

Hearing Officer's Report and Recommendation, 12/13/12, at 6-7.

Although not explained within Appellant's brief, Appellant seems to claim that the hearing officer erred in concluding that, in 2011, Appellant received a gross $40,067.00 *per diem* allowance and a $12,203.00 reimbursement for "mileage, meals[,] and entertainment."[12] According to Appellant, during the October 22, 2012 hearing, there was no evidence that Appellant received such income. Appellant's Brief at 12.

Appellant's claim fails automatically, as Appellant does not contest the hearing officer's factual declaration that Appellant's own attorney corresponded with the hearing officer and "relayed to the [h]earing [o]fficer that[, in 2011,] [Appellant] had received a [tax-free] *per diem* allowance of $40,067.00 and $12,203.00 for mileage, meals[,] and entertainment." **Steiner v. Markel**, 968 A.2d 1253, 1256-1257 (Pa. 2009) (an appellate court may not litigate for the parties or "reverse a trial court judgment on a basis that was not properly raised and preserved by the parties").

Further, Appellant's claim fails because Appellant sought a downward modification in his support obligations and, as such, Appellant bore the burden of proving "a material and substantial change in circumstances since

---

[12] These two amounts total $52,270.00, which is fairly close to Appellant's claim that the trial court erred in attributing $52,203.00 to his income.

19

the [existing o]rder was entered." ***Crawford***, 633 A.2d at 164. With respect to Appellant's year-2011 income, the "existing order" in this case was a May 19, 2011 modification order, which terminated Appellant's obligation to pay $236.00 per month for health insurance. Trial Court Order, 5/18/11, at 1. We note that the May 19, 2011 order did not alter Appellant's support obligations – and these support obligations were based, in part, upon an earlier factual determination that Appellant's year-2008 gross *per diem* allowance was $40,067.00, and Appellant's year-2008 "mileage, meals[,] and entertainment" reimbursement was $12,203.00. Hearing Officer's Report and Recommendation, 8/20/09, at 9; ***see also*** ***Samii***, 847 A.2d at 695 ("[t]he most recent [support] order is the one that is pertinent to the determination of whether a change in circumstances has occurred . . . [even if the most recent order did not] change the amount of support ordered").

Simply stated, Appellant did not provide any evidence or argument during the October 22, 2012 hearing that his "gross *per diem* allowance" or his "mileage, meals[,] and entertainment" reimbursement had been eliminated or altered since the entry of the May 19, 2011 order. N.T. Hearing, 10/22/12, at 49. To be sure, during the October 22, 2012 hearing, Appellant explicitly testified that, in 2011, he received "a *per diem*" and that the amount of the gross year-2011 *per diem* "was already given at past

hearings." *Id.* This testimony suggests that Appellant's gross year-2011 *per diem* had not changed since the entry of the prior support order.

Therefore, the hearing officer did not err in concluding that Appellant's year-2011 income included $52,270.00 in combined "gross *per diem* allowances" and "mileage, meals[,] and entertainment" reimbursement. Further, the trial court did not err in adopting the hearing officer's report and recommendation on this issue.

Appellant also claims that the hearing officer incorrectly determined his year-2011 net income by failing to deduct certain "ordinary and necessary expenses attributable to [Appellant's] job." Appellant's Brief at 12-13. This claim fails because Appellant failed to allege or argue that his "ordinary and necessary [work] expenses" changed since the prior support order was entered and because, in raising the argument to this Court, Appellant completely ignores the fact that the hearing officer determined Appellant received reimbursement for his work expenses. Hearing Officer's Report and Recommendation, 12/13/12, at 6-7. The trial court then adopted this recommendation as its own.

Therefore, since Appellant does not challenge the trial court's factual determination that Appellant was reimbursed for his work expenses, Appellant is not entitled to relief on this claim.

For Appellant's second claim on appeal, Appellant contends that the trial court erred in adopting the hearing officer's determination that Ms.

Kundratic has "an earning capacity equal to a minimum wage job of $15,080.00 per year." Appellant's Brief at 14. According to Appellant, in assigning Ms. Kundratic a minimum wage earning capacity, the hearing officer "failed to consider" Ms. Kundratic's earnings history and the fact that Ms. Kundratic "suffers from no disabilities and has no child care obligations." *Id.*

In this case, the hearing officer was well aware of Ms. Kundratic's earnings history and the hearing officer knew that Ms. Kundratic does not have a disability and that she had limited childcare obligations. Hearing Officer's Report and Recommendation, 12/13/12, at 8 ("[Ms. Kundratic] is attractive, articulate and has no physical disabilities nor does she have any child care responsibilities. [Ms. Kundratic] testified that she worked at Lord & Taylor in a non-managerial full time job for [17] years. Her pay increased from $14.00 an hour to $37.00 an hour over the course of her employment."). After considering these fact – and after considering Ms. Kundratic's "[a]ge, education, training, health, [and] work experience" – the hearing officer determined that Ms. Kundratic's earning capacity was at the level of a full-time, minimum wage job. The trial court then adopted the hearing officer's conclusion.

Therefore, when the hearing officer calculated Ms. Kundratic's earning capacity, the hearing officer indeed considered Ms. Kundratic's earnings history, and the fact that Ms. Kundratic neither has a disability nor has

extensive childcare obligations. Appellant's claim to the contrary has no basis in fact. The claim thus fails.

Third, Appellant claims that the trial court erred in adopting the hearing officer's determination of Ms. Kundratic's net income, as Ms. Kundratic "failed to include certain taxable income" in her income tax returns. Appellant's Brief at 15. Appellant has not supported this argument with any relevant discussion, citation to the record, citation to evidence, or citation to law. Therefore, Appellant's third claim on appeal is waived. ***Commonwealth v. Miller***, 721 A.2d 1121, 1124 ("[w]e decline to become appellant's counsel. When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof") (internal quotations and citations omitted).

Fourth, Appellant claims that the trial court erred in adopting the hearing officer's inclusion of a mortgage deviation in the support order. Appellant's Brief at 15. According to Appellant, the inclusion of a mortgage deviation constituted error because, during the October 22, 2012 hearing, the parties presented no evidence of the amount Ms. Kundratic was required to pay for the mortgage on the marital home and because Ms. Kundratic did not request a mortgage deviation. Appellant's Brief at 15. These claims fail.

In relevant part, Pennsylvania Rule of Civil Procedure 1910.16-6(e) declares:

> The guidelines assume that the spouse occupying the marital residence will be solely responsible for the mortgage payment, real estate taxes, and homeowners' insurance. Similarly, the court will assume that the party occupying the marital residence will be paying the items listed unless the recommendation specifically provides otherwise. If the obligee is living in the marital residence and the mortgage payment exceeds 25% of the obligee's net income (including amounts of spousal support, alimony pendente lite and child support), the court may direct the obligor to assume up to 50% of the excess amount as part of the total support award. . . . This rule shall not be applied after a final resolution of all outstanding economic claims. For purposes of this subdivision, the term "mortgage" shall include first mortgages, real estate taxes and homeowners' insurance and may include any subsequent mortgages, home equity loans and any other obligations incurred during the marriage which are secured by the marital residence.

Pa.R.C.P. 1910.16-6(e).

At the outset, Appellant is incorrect to claim that the hearing officer had no evidence of Ms. Kundratic's mortgage obligation. Indeed, Ms. Kundratic introduced her total monthly mortgage obligation into evidence during the support hearing. Ms. Kundratic's Exhibit 4-C. Ms. Kundratic also introduced into evidence her real estate tax obligations. Ms. Kundratic's Exhibits 4-A and 4-B.

Appellant is also incorrect to claim that the hearing officer did not have the authority to order a mortgage deviation. Pennsylvania Rule of Civil Procedure 1910.19(c) declares that, pursuant to a petition for modification, "the trier of fact may modify or terminate the existing support order **in any appropriate manner based upon the evidence presented** without regard to which party filed the petition for modification." Pa.R.C.P.

24

1910.19(c) (emphasis added). In this case, Ms. Kundratic requested an upward modification in Appellant's support obligation and, during the support hearing, Ms. Kundratic presented the hearing officer with evidence regarding her income, her mortgage obligation, and her real estate tax obligations. Appellant did not object to this evidence. Moreover, under Pennsylvania Rule of Civil Procedure 1910.16-6(e), a mortgage deviation may be granted where "the obligee is living in the marital residence and the mortgage payment exceeds 25% of the obligee's net income." Pa.R.C.P. 1910.16-6(e). Here, since the hearing officer had evidence regarding Ms. Kundratic's net income, mortgage obligation, and real estate obligations, the hearing officer had the authority to "modify . . . the existing support order in any appropriate manner based upon the evidence presented." *Id.* The hearing officer thus had the authority to recommend a mortgage deviation in this case and the trial court had the authority to adopt the hearing officer's recommendation. Appellant's claim on appeal fails.

Appellant's final two claims on appeal concern the award of APL to Ms. Kundratic. We conclude that Appellant's final two claims on appeal fail. Indeed, as we will discuss later in this memorandum, the trial court erred when it limited Ms. Kundratic's APL award. We will thus limit our discussion regarding the APL award to the issues raised in Ms. Kundratic's appeal.

With respect to Ms. Kundratic's appeal, Ms. Kundratic first claims that the trial court erred when it "decid[ed] the exceptions without [receiving] . .

. transcripts of the hearing before the [hearing officer]." Ms. Kundratic's Brief at 13. This claim is waived, as Ms. Kundratic did not raise the claim before the trial court. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Further, even if the claim were not waived, the claim would fail because there is no evidence that the trial court decided the exceptions before it received the transcript of the hearing. Therefore, Ms. Kundratic's claim fails.

Second, Ms. Kundratic claims that "Appellant's July 21, 2011 petition to modify the support order [must] be dismissed due to a lack of a change in material circumstances." Ms. Kundratic's Brief at 16. This claim is waived because Ms. Kundratic never raised the claim at any point in the lower court proceedings and because Ms. Kundratic did not raise the claim in her exceptions to the hearing officer's report and recommendation. Pa.R.A.P. 302(a); Pa.R.C.P. 1910.12(f) ("[m]atters not covered by exceptions are deemed waived").

Third, Ms. Kundratic contends that the hearing officer erred in attributing to her a full-time, minimum wage earning capacity. According to Ms. Kundratic, "[t]here was no evidence in the record that she could find a job at that amount" and "[t]here was no evidence in the record that she failed to [] mitigate her circumstances." Ms. Kundratic's Brief at 25-26. This claim fails.

Pennsylvania Rule of Civil Procedure 1910.16-2 provides that, generally, "the amount of support to be awarded is based upon the parties' monthly net income." Pa.R.C.P. 1910.16-2. Nevertheless, Rule 1910.16-2 lists certain exceptions to this general rule. As is relevant to Ms. Kundratic's current claim, Rule 1910.16-2(d)(4) declares that, "[i]f the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity." Pa.R.C.P. 1910.16-2(d)(4).

To determine a party's earning capacity, the rule states:

Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).

As explained above, during the support hearing, the evidence demonstrated that Ms. Kundratic was a 45-year-old high school graduate with no physical disabilities and limited childcare responsibilities. N.T. Hearing, 10/22/12, at 21. Further, Ms. Kundratic testified that – until she

was laid off from Lord & Taylor in January 2009 – she had worked at Lord & Taylor for 17 years, in a full-time position, earning at least $14.00 per hour. *Id.* at 22. Notwithstanding her extensive work history, maturity, good health, and physical abilities, Ms. Kundratic testified at the October 22, 2012 support hearing that she was currently employed at Bath & Body Works in a mere part-time capacity, earning $7.62 per hour – and that she had not worked in a full-time position since she was laid off from Lord & Taylor in 2009. *Id.* at 25.

As the hearing officer concluded, given Ms. Kundratic's "[a]ge, education, training, health, work experience, earnings history and child care responsibilities," it was inconceivable that Ms. Kundratic could not secure a full-time, minimum wage job in the over-three-years since she had been laid off from Lord & Taylor.[13] Pa.R.C.P. 1910.16-2(d)(4). The hearing officer thus concluded that Ms. Kundratic had "willfully failed to obtain . . . appropriate employment" and that the officer was required to impute to Ms. Kundratic an income equal to a full-time, minimum wage job. Hearing Officer's Report and Recommendation, 12/13/12, at 8-9. The trial court then adopted the hearing officer's recommendation in its order of court.

Put simply, the trial court did not abuse its discretion when it adopted the hearing officer's recommendation and imputed to Ms. Kundratic an

---

[13] We note that, during the October 22, 2012 hearing, Ms. Kundratic testified that she had only submitted "six or seven" job applications since July 2011. N.T. Hearing, 10/22/12, at 20-21.

28

earning capacity equal to a full-time, minimum wage job. The amount constitutes a realistic measurement of what Ms. Kundratic should be earning, considering her "age, health, mental and physical condition[,] and training." **D.H. v. R.H.**, 900 A.2d 922, 930 (Pa. Super. 2006) (internal quotations and citations omitted). Ms. Kundratic's claim on appeal fails.

For Ms. Kundratic's fourth and fifth claims on appeal, Ms. Kundratic contends that the trial court erred in terminating her APL and mortgage deviation effective February 1, 2013. We agree. Therefore, we vacate this portion of the trial court's order and remand.

As we have explained, on January 3, 2013, the trial court entered an interim order that was consistent with the hearing officer's amended recommendation. Further, within the hearing officer's report and recommendation, the hearing officer explained that it recommended Ms. Kundratic receive APL and mortgage expenses because Appellant had appealed the equitable distribution award to the Superior Court – and Appellant had thus frozen the equitable distribution award and the award of the marital home to Ms. Kundratic pending the appeal. Moreover, at the time of the support hearing, Appellant's appeal was still pending before this Court.[14]

Appellant filed exceptions to the hearing officer's recommendation and to the trial court's interim order, claiming that the hearing officer should

---

[14] Indeed, as we write this memorandum, Appellant's appeal of the equitable distribution award is pending before our Supreme Court.

have recommended that Appellant's APL obligation terminate on July 10, 2012 – which was the date that oral argument on Appellant's first equitable distribution appeal occurred before the Superior Court. Appellant's Exceptions, 1/2/13, at 1. On October 2, 2013, the trial court entered an order denying in part and granting in part Appellant's exceptions. It ordered that Appellant's exceptions were granted only to the extent that "[t]he spousal support/APL is terminated effective February 1, 2013." Trial Court Order, 10/2/13, at 1. The trial court provided no explanation for the order or for the seemingly random termination date.

Now on appeal, Ms. Kundratic claims that the trial court erred in terminating her APL effective February 1, 2013. We agree. We have explained:

> "[u]pon entry of a decree in divorce, any existing order for spousal support shall be deemed an order for alimony *pendente lite* if any economic claims remain pending." Pa.R.C.P. 1920.31(d). Alimony *pendente lite* ("APL") is defined as "[a]n order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S.A. § 3103. Pursuant to 23 Pa.C.S.A. § 3702, alimony *pendente lite* is allowable to either spouse during the pendency of the action.
>
> However, "[t]he award of APL is not dependent upon the status of the parties but on the state of the litigation. This means, in theory, that the APL terminates at the time of divorce which usually concludes the litigation." *DeMasi v. DeMasi*, 597 A.2d 101, 104 (Pa. Super. 1991). In *DeMasi,* our Court held that
>
>> a divorce is not final for purposes of APL until appeals have been exhausted and a final decree has been entered. Thus, while APL typically ends at the award of

30

> the divorce decree, which also should be the point at which equitable distribution has been determined, if an appeal is pending on matters of equitable distribution, despite the entry of the decree, APL will continue throughout the appeal process **and any remand** until a final [o]rder has been entered.

***Prol v. Prol***, 840 A.2d 333, 335 (Pa. Super. 2003) (some internal quotations and citations omitted) (emphasis in original).

In the case at bar, the trial court abused its discretion when it terminated both the APL and the mortgage deviation effective February 1, 2013.[15]  Certainly, Appellant's appeal of the equitable distribution award is still pending in this Court – and Ms. Kundratic is entitled to receive both APL and a mortgage deviation until the economic claims are resolved.  ***Id.*** Therefore, we vacate this portion of the trial court's order and remand for further proceedings.

For Ms. Kundratic's final claims on appeal, Ms. Kundratic contends that the trial court erred when it adopted the hearing officer's recommendation and held:  1) that Appellant's December 31, 2011 termination from employment was involuntary; and 2) that, during the ensuing time, Appellant had attempted to mitigate his income loss by finding other employment.  Ms. Kundratic's Brief at 29-33.  We conclude that the trial court did not abuse its discretion when it held that Appellant's termination

---

[15] As we have already explained, the trial court properly ordered that Ms. Kundratic was entitled to a mortgage deviation in this case.

31

was involuntary, but that the court did abuse its discretion when it held that Appellant attempted to mitigate his income loss.

Although we have quoted a segment of Pennsylvania Rule of Civil Procedure 1910.16-2 above, we will quote the portions of the rule that are relevant to Ms. Kundratic's current claim:

> **Rule 1910.16-2.  Support Guidelines.   Calculation of Net Income**
>
> Generally, the amount of support to be awarded is based upon the parties' monthly net income.
>
> . . .
>
> (d) Reduced or Fluctuating Income.
>
> > (1) *Voluntary Reduction of Income*.  When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.
> >
> > (2) *Involuntary Reduction of, and Fluctuations in, Income.*  No adjustments in support payments will be made for normal fluctuations in earnings.  However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.
> >
> > . . .
> >
> > (4) *Earning Capacity.*  If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact

> may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2.

With respect to the first subpart of Ms. Kundratic's claim, Ms. Kundratic contends that the trial court abused its discretion when it determined that Appellant's December 31, 2011 termination from his employment was involuntary. According to Ms. Kundratic, the evidence demonstrates that Appellant's termination was voluntary because Appellant testified that "he was laid off [from his employment] because he failed to keep up with the current training needed to effectively do his job." Ms. Kundratic's Brief at 29. Ms. Kundratic has misread the record evidence and her claim on appeal thus fails.

During the October 22, 2012 support hearing, Appellant never testified that his failure to "keep up with [his] current training" caused his December 31, 2011 job termination. Rather, Appellant testified that he is a software consultant and, shortly before he was laid-off from work, he was

33

employed by a "head hunting" service named Quorum Technical Services, Inc. N.T. Hearing, 10/22/12, at 28. Quorum then contracted Appellant's services to a company named JRI America. *Id.* at 37-38.

Appellant testified that, when "the insurance [became] too high to insure [Appellant] on th[e particular] job" he was working at JRI America, either JRI America or Quorum terminated their particular contract. As a result, Appellant lost his job. *Id.* at 28, 29, and 37-38. Moreover, we note that, on cross-examination, Ms. Kundratic's attorney specifically asked Appellant whether he was laid-off because he was not up to date on his training. Appellant responded: "[n]o. The reason that [] Quorum told me the reason was insurance. They couldn't afford the insurance any more. To insure me on that site." *Id.* at 63.

After hearing Appellant testify during the support hearing, the hearing officer concluded that Appellant's December 31, 2011 lay-off was involuntary. The trial court adopted this determination.

Therefore, Ms. Kundratic's claim on appeal – that the trial court abused its discretion in concluding that Appellant's termination was involuntary, as Appellant testified that "he was laid off [from his employment] because he failed to keep up with the current training needed to effectively do his job" – is factually baseless. The claim fails.

With respect to the second subpart of Ms. Kundratic's final claim on appeal, Ms. Kundratic contends that the trial court abused its discretion in

concluding that, after Appellant was laid-off from work, Appellant had attempted to mitigate his income loss by endeavoring to obtain appropriate employment. Ms. Kundratic's Brief at 31-33. We agree with Ms. Kundratic that the trial court erred in this regard. Therefore, we vacate the portion of the trial court's order that based the support award on Appellant's actual, unemployment compensation insurance income – and we remand so the trial court may determine Appellant's earning capacity and enter an appropriate support order.

During the support hearing, Appellant testified that – after he was laid off from work in December 2011 – he posted his resume on two online employment websites. Appellant testified that he currently visits one of the online employment websites "about every two or three days." N.T. Hearing, 10/22/12, at 51. As a result of these efforts, Appellant testified that he has received a number of telephone inquiries regarding employment in his field of software consulting – but that he has received limited interview opportunities and no job offers.[16]

---

[16] Within Ms. Kundratic's brief to this Court, Ms. Kundratic claims that Appellant was given "two [] different job offers . . . that he turned down." Ms. Kundratic's Brief at 33. Again, Ms. Kundratic has misread the record testimony. Indeed, Appellant specifically testified that he has received no job offers since he was laid off from work. N.T. Hearing, 10/22/12, at 47. Moreover, Ms. Kundratic incorrectly declares that "Appellant turned down a job with Disney in [his employment] field making $50.00 per hour." Ms. Kundratic's Brief at 32. In fact, Appellant testified that he merely turned down a job interview with Walt Disney World – and that he did so because the interview was in Florida. N.T. Hearing, 10/22/12, at 33.

However, during the support hearing, Appellant admitted that he has voluntarily decided not to maintain his current software training and that, because of this decision, it is now "very difficult" for him to find a job. Appellant testified:

> Q: You've indicated earlier that you're not keeping up on your training. As a matter of fact, it's harder for you to get a job because you don't keep up on your training. Is that correct?
>
> A: Now it is. Yes it is. . . .
>
> . . .
>
> Q: . . . You testified earlier that it's very difficult to get a job if you're not up on your training. Is that correct?
>
> A: Yes.
>
> Q: And you, you were the one who decided whether or not to get additional training or not?
>
> A: If they were coming out with new software. Yes it was my decision.
>
> . . .
>
> Q: . . . So one of the reasons that you can't get a job right now is that you're not up to date on your training. You agree with that. Right?
>
> A: That could be part of it. Cause there' a lot of . . . .
>
> Q: Right.
>
> A: Could I finish the [answer]. There's other. I can still get a job with training of [2005] up if I can find a place that has that software not the newer software.
>
> Q: But that limits the amount of places you can find a job. Correct?

A: I guess so (inaudible) any place for a job.

N.T. Hearing, 10/22/12, at 40, 43, and 44-45.

In determining that Appellant had attempted to find appropriate employment following his lay-off, the hearing officer and the trial court simply failed to consider Appellant's above admissions. This constitutes an abuse of discretion. To be sure, Appellant admitted that his willful failure to update his software training has made it so that it is now "very difficult" for him to find appropriate employment in his field. In other words, Appellant has admitted that he has "willfully failed to obtain . . . appropriate employment." Pa.R.C.P. 1910.16-2.

As a result of Appellant's admissions, we must vacate the portion of the trial court's order that based the award of support on Appellant's actual, unemployment compensation insurance income – and we remand so the trial court may determine Appellant's earning capacity and enter an appropriate support order.

Order affirmed in part, vacated in part, and remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2014