J-A16010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THOMAS V. OLUP AND CAROLE A. OLUP,<br><br>Appellants<br><br>v.<br><br>PENNSYLVANIA AMERICAN WATER COMPANY, A PENNSYLVANIA CORPORATION,<br><br>Appellee | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br>No. 838 WDA 2015 |

Appeal from the Judgment July 28, 2015
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): No. GD 10-010764

BEFORE:  SHOGAN, OLSON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED SEPTEMBER 26, 2016**

Thomas V. and Carole A. Olup (collectively, "the Olups") appeal from the judgment entered on July 28, 2015,[1] in favor of Pennsylvania American Water Company ("PAWC").  We affirm.

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  An appeal properly lies from the entry of judgment, not from the order denying post-trial motions. ***Johnston the Florist, Inc. v. TEDCO Constr. Corp.,*** 657 A.2d 511, 516 (Pa. Super. 1995) *(en banc).* Nevertheless, a final judgment entered during pendency of an appeal is sufficient to perfect appellate jurisdiction. ***Drum v. Shaull Equipment and Supply, Co.,*** 787 A.2d 1050 (Pa. Super. 2001). Here, the Olups filed a notice of appeal prematurely on May 27, 2015, prior to the entry of judgment on July 28, 2015.  Thus, the Olups' notice of appeal relates forward to the date judgment was entered. ***See*** Pa.R.A.P. 905(a) (stating notice of appeal filed after court's determination but before entry of appealable order shall be
*(Footnote Continued Next Page)*

The Olups filed an action sounding in negligence, trespass, and private nuisance[2] against PAWC for property damage to the unoccupied dwelling at 719 Agnew Road ("the Property"), which was caused by a June 14, 2008 water line break near 741/745 Agnew Road in North Baldwin. PAWC owned and/or maintained the water line. A water line break occurred in approximately the same location in 1994, damaging the Property and requiring the Olups to expend substantial sums for repairs.

The case went to trial. Mr. Olup, a retired professional engineer, presented himself as an expert, relying on an updated 2010 report (the "2010 Report"), which was based on a report he had prepared in 1996 regarding the 1994 water line break. The trial court refused to qualify Mr. Olup as an expert because, *inter alia*, he "could not have reliably informed the jury of safe practices or industry standards that controlled waterlines or waterline distribution systems at times pertinent to this case." Trial Court Opinion, 8/20/15, at 5. Similarly, the trial court refused to allow

---

*(Footnote Continued)* ————————

treated as filed after such entry and on date of entry). Hence, no jurisdictional defects impede our review, and we have amended the caption accordingly.

[2] The Olups' complaint includes averments of *res ipsa loquitur*. As the trial court instructs, *res ipsa loquitur* is not an independent cause of action but "a rule of evidence that permits a jury to infer negligence and causation where the injury at issue is one that does not ordinarily occur in the absence of negligence." Trial Court Opinion, 8/20/15, at 2 n.1 (citing **Gilbert v. Korvette, Inc.**, 327 A.2d 94 (Pa. 1974), and **Fessenden v. Robert Packer Hospital**, 97 A.3d 1225 (Pa. Super. 2014)).

Cyrus Wright, who purportedly contributed to the 2010 Report, to testify as an expert witness. The trial court also excluded the Olups' videotape evidence—an editorialized account of a November 2014 French-drain excavation at a neighboring residence on Agnew Road—because of its remoteness in time and location to the Property. *Id.* at 6. Lastly, opining that the Olups failed to establish tortious conduct by PAWC in relation to five other water line breaks on Agnew Road over thirty-three years, the trial court refused to instruct the jury on private nuisance and continuing trespass.

At the conclusion of the trial, the jury entered a defense verdict. The Olups filed a post-trial motion for a new trial, which the trial court denied. This appeal followed. The Olups and the trial court have complied with Pa.R.A.P. 1925.

The Olups present the following questions for our consideration:

1. Whether the trial court erred or abused its discretion in not awarding [the] Olups a new trial as to all issues in the case.

2. Whether the trial court abused its discretion in not permitting Plaintiff, Thomas V. Olup (a former Professional Engineer in Pennsylvania, Ohio, and West Virginia) to testify as an expert, and in not permitting Mr. Olup to offer opinion testimony as to [PAWC's] negligence in the design and construction of the subject water line in and along Agnew Road, as well as the causal connection between the water line break and [the] Olups' damages and losses.

3. Whether the trial court erred or abused its discretion in requiring Thomas V. Olup to produce a curriculum vitae or resume at trial.

4. Whether the trial court erred or abused its discretion in requiring Thomas V. Olup to be presently licensed or registered to qualify as an expert.

5. Whether the trial court erred or abused its discretion in striking Thomas V. Olup's expert report relative to the 2008 main line break, and accompanying 1996 water line break reports, photographs, and supporting documentation.

6. Whether the trial court erred in not instructing the jury on [the] Olups' claims for private nuisance and trespass.

7. Whether the trial court erred or abused its discretion in not permitting Cyrus Wright, P.E. to testify, in light of his co-authorship of the 1996 report as well as his co-authorship of [the] Olup[s'] expert report relative to the 2008 main line break.

8. Whether the trial court erred or abused its discretion in excluding [the] Olups' proposed videotape of the dwelling at 719 Agnew Road and the excavation of a French drain system at the next door property at 725 Agnew Road.

9. Whether the trial court was biased against [the] Olups for at least the following reasons:

   i. In that the trial court was hypercritical of Thomas Olup's expert report(s) referring to them as the worst the Court has seen in 30 years;

   ii. In interrupting [the] Olup's [sic] counsel's closing argument ostensibly for the reason that a juror was looking or asking for water, when no similar interruption was made during the course of [PAWC's] counsel's closing argument;

   iii. In allowing and further enabling the defense's leading questioning of Robert Bielich, a defense witness;

   iv. In castigating [the] Olup's [sic] counsel for counsel's innocuous inquiry as to whether the exhibits (then sitting in the courtroom) were to be

given to the jury for the purposes of deliberations;

v.   In that the atmosphere and tenor of the trial was biased against [the] Olups, given the trial court's wholesale exclusion of Mr. Thomas V. Olup's expert reports and testimony.

The Olups' Brief at 7–8.

The Olups' first issue is a generalized claim that the trial court erred in denying their motion for a new trial. The following standards guide our review:

> We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. **Stalsitz v. Allentown Hosp.**, 814 A.2d 766, 771 (Pa.Super.2002). An abuse of discretion exists when the trial court has rendered a decision or a judgment which is "manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will." **Stalsitz**, 814 A.2d at 771. This Court may not substitute its judgment for that of the trial court. "A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion." **Slappo v. J's Dev. Assocs. Inc.**, 791 A.2d 409, 414 (Pa.Super.2002). If the record adequately supports the trial court's reasons and factual basis, an abuse of discretion will not be found. **Id.** at 414.

**Pratt v. St. Christopher's Hosp.**, 824 A.2d 299, 302 (Pa. Super. 2003).

According to the Olups, "the trial was permeated with abuses of discretion and legal errors." The Olups' Brief at 15. Upon review of the specific claims of error raised in the Olups' remaining issues, we conclude that none of the Olups' claims warrants relief.

The Olups specify in their second issue that the trial court erred in refusing to permit Mr. Olup to testify as an expert. The Olups' Brief at 16.

At trial, Mr. Olup first testified as a fact witness and was recalled to undergo *voir dire* as an expert witness. N.T., 3/24–30/15, at 150–236, 288–304. Defense counsel objected to Mr. Olup testifying as an expert on three grounds: failure to qualify as an expert under the Pennsylvania Rules of Civil Procedure, bias as a plaintiff, and undermined credibility.[3] **Id.** at 304, 312. Over a lunch break, the trial court reviewed the request to present Mr. Olup as an expert and to accept the 2010 Report. **Id.** at 311. After further discussion with counsel, the trial court rejected the expert report—as "the worst engineer's report [the court had] seen in 30 years"—and precluded Mr. Olup from testifying as an expert, but allowed him to be "recalled as a fact witness as an engineer." **Id.** at 316, 331.

We note that "the standard for qualification of an expert witness is a liberal one. When determining whether a witness is qualified as an expert the court is to examine whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation." **Callahan v. Nat'l R.R. Passenger Corp.**, 979 A.2d 866, 875–876 (Pa. Super. 2009) (quoting **Kovalev v. Sowell**, 839 A.2d 359, 363 (Pa. Super. 2003) (citations omitted)). If he does:

---

[3] PAWC's *voir dire* examination highlighted Mr. Olup's outdated license and experience, lack of continuing education, his narrative report, and his use of the fax cover sheet of an engineering company he never worked for to make a right-to-know, public record request of Baldwin Borough. N.T., 3/24–30/15, at 296–304.

he may testify and the weight to be given to such testimony is for the trier of fact to determine. It is also well established that a witness may be qualified to render an expert opinion based on training and experience. Formal education on the subject matter of the testimony is not required.... It is not a necessary prerequisite that the expert be possessed of all of the knowledge in a given field, only that he possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience.

*Miller v. Brass Rail Tavern, Inc.*, 664 A.2d 525, 528 (Pa. 1995) (citations omitted). However, when considering the admission of expert evidence, our standard of review is very narrow:

The admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court.... [W]e may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Turney Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 839 (Pa. Super. 1999); Pa.R.E. 702 cmt.

The Olups argue that Mr. Olup "clearly possessed the requisite knowledge, skill, experience, training and education to qualify him as an expert witness [and] for qualification to provide expert testimony relative to waterlines, waterline distribution systems, and as to causation and damages." The Olups' Brief at 16. In support of their position, the Olups offer a summary of Mr. Olup's employment as a professional engineer and his "extensive experience in water, sewage, storm and sanitary line problems, emergencies and line failures; planning, design and construction

of water distribution systems; hydraulics, underdrain systems, and French drain systems; and the impact of water breaks." *Id.* at 17. The Olups further argue that Mr. Olup "is well versed in the theories, principles, practices, specifications and codes of engineering practice related to water line construction and water distribution systems." *Id.* Additionally, the Olups compare and contrast Mr. Olup's qualifications as an expert with those of PAWC's expert witness, Richard Bragg, an accident reconstruction expert with no water distribution experience. *Id.* at 19.

PAWC counters that Mr. Olup's personal accusations against PAWC, his bias, lack of a professional license, and absence of any bases for his opinions disqualified Mr. Olup as an expert. PAWC's Brief at 9–10. Similarly, the trial court opined:

> [The Olups] contend that the court abused its discretion in not permitting Thomas V. Olup, a former professional engineer, to testify as an expert and proffer an opinion as to the negligence of [PAWC] and the cause of the damage to the residence. [The Olups] accurately assert that the standard of qualification for an expert witness is a liberal one. A witness with reasonable pretension to specialized knowledge on subject [sic] under investigation may be permitted to give expert opinion testimony. *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 480, 664 A.2d 525, 528 (1995). In this instance, however, the witness whom [the Olups] offered as an expert attempted to resurrect an analysis he had authored in 1996 in connection with water damage that had occurred to the [Property] in 1994. That witness had predicated his earlier analysis substantially upon standards expressed in the 1983 Standard Handbook for Civil Engineers.
>
> The report offered on [the Olups'] behalf in the instant matter merely appended handwritten notes to the 1996 report. Those notes do not purport to rely upon any more current

external authority – or to set forth more current factual determinations – than had the 1996 report. As problematically, [the Olups'] proposed expert had neither worked as an engineer nor taken any continuing education courses within that field for over ten years.

\* \* \*

If a proffered expert cannot provide reasonable assurance that his or her knowledge or practical experience in a pertinent area of claimed expertise is sufficient to assist a jury in determining whether standards controlling at the time of the events that gave rise to the case have been offended, then that witness provides little that would be pertinent or helpful to the jury's deliberations. In this instance, [the Olups'] proposed expert provided no assurances that his opinion was informed by theories, principles, practices, specifications or codes that remained pertinent and generally accepted at times proximate to 2008 and no assurance that his testimony as an expert would enhance the jury's comprehension or assessment of the evidence.

Trial Court Opinion, 8/20/15, at 2–3.

We note that even a cursory review of Mr. Olup's education, training, and experience reveals that he had a reasonable pretension to specialized knowledge on the subject of water distribution systems. He possessed more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence, or experience of the jury. As for Mr. Olup's retired status, personal accusations, bias, credibility, and lack of a current professional license, such factors would affect the weight of his testimony. *Miller*, 664 A.2d at 528.

Nevertheless, we affirm the trial court's exclusionary ruling. The 2010 Report does not include any bases for the opinions set forth therein.

Moreover, the opinions expressed in the 2010 Report did not include the requisite degree of engineering certainty to support the Olups' claims. Also, as the trial court observed, Mr. Olup "could not speak to operational or design-safety standards that might have been in place at the time of events pertinent to this case." Trial Court Opinion, 8/20/15, at 4–5. In fact, the 2010 Report reads like an injured party's educated narrative, not like an expert's objective reasoning and analysis. Although Mr. Olup included industry terms of art in the 2010 Report, *e.g.*, clamp, thrust blocks, and useful life, he did not address water distribution protocols, leak prevention standards, or other relevant topics post-dating the 1994 water line break that would have assisted the jury in determining if PAWC's alleged negligence was responsible for the 2008 water line break. Given our narrow standard of review, we discern no abuse of the trial court's discretion in not permitting Mr. Olup to testify as an expert based on his substandard expert report. Pa.R.E. 212.2(c)(1)(ii).

In their third and fourth issues, the Olups allege the trial court erred in requiring Mr. Olup to produce a *curriculum vitae* ("CV") or resume at trial and in requiring Mr. Olup to be licensed or registered. The Olups' Brief at 20, 21. We note that the trial court did not address these claims of error in its Pa.R.A.P. 1925(a) opinion.

Our review of the record reveals that, following *voir dire* examination of Mr. Olup, defense counsel objected to Mr. Olup being called as an expert.

N.T., 3/24–30/15, at 304. During a sidebar discussion, the trial court questioned whether Mr. Olup had a CV. When informed that he did not, the trial court queried, "So how is it that I'm going to define him as an expert witness?" *Id.* at 305. The trial court further questioned Mr. Olup's qualifications being based on "books he wrote . . . an expired license" and his work as a volunteer municipal engineer. *Id.* at 305–306.

Upon review of the entire *voir dire* examination and sidebar discussion, we conclude the trial court did not require Mr. Olup to produce a CV or resumé or to be licensed or certified. Rather, as we discussed in resolving the Olups' first two issues, the trial court properly exercised its discretion in concluding that the deficiencies in the contents of his expert report precluded him from testifying. Thus, the Olups' third and fourth claims lack merit.

Next, the Olups complain that the trial court erred or abused its discretion in striking Mr. Olup's reports, photographs, and supporting documentation, and that the ruling resulted in prejudice to the Olups' case. The Olups' Brief at 22. We disagree.

The admission or exclusion of evidence is a matter left to the sound discretion of the trial court. ***Harris v. Toys "R" Us***, 880 A.2d 1270, 1274 (Pa. Super. 2005). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Id.***

According to the trial court:

In this instance, however, the witness whom [the Olups] offered as an expert attempted to resurrect an analysis he had authored in 1996 in connection with water damage that had occurred to the 719 Agnew Road property in 1994. That witness had predicated his earlier analysis substantially upon standards expressed in the 1983 Standard Handbook for Civil Engineers.

The report offered on [the Olups'] behalf in the instant matter merely appended handwritten notes to the 1996 report. Those notes did not purport to rely upon any more current external authority — or to set forth more current factual determinations — than had the 1996 report.

Trial Court Opinion, 8/20/15, at 2–3.

As stated above, the 2010 Report is substandard. Moreover, although the pretrial statement provided in the certified record does not contain photographs, the notes of testimony indicate that the Olups submitted approximately fourteen photographs which were admitted into evidence. N.T., 3/24–30/15, at 356–357. Also, the supporting documentation consists of pages from technical books with little or no explanation, analysis, or application to the 2008 water line break. In sum, the Olups have not persuaded us that the trial court abused its discretion in precluding the 2010 Report. Thus, no relief is due.

In the Olups' sixth issue, they argue that the trial court erred in not instructing the jury on private nuisance and trespass. The Olups' Brief at 26. PAWC argues that this issue is waived. PAWC's Brief at 13. We agree.

Objections to jury instructions must be made before the jury retires to deliberate. Pa.R.C.P. 227(b). However, we have held, "An exception to the

trial court's refusal to charge the jury as requested is sufficient to preserve the issue for appeal even if there is no specific objection to the charge at trial." *Caldwell v. City of Philadelphia*, 517 A.2d 1296 (Pa. Super. 1986) (citations omitted).

Here, the trial court disposed of this claim, in relevant part, as follows:

In this case, the [the Olups] relied upon the allegation that five water main breaks had occurred along Agnew Road over an approximate thirty-three (33) year period as sufficient evidence of a private nuisance and continuing trespass. [The Olups'] burden, however, is to demonstrate continuing or recurrent *tortious* activity that could [be] attributed to [PAWC] and that resulted in actual harm to [the Olups]. [The Olups'] proof of prior breaks did not provide proof of negligence.

[The Olups] proposed and I initially considered an instruction to the jury regarding private nuisance and continuing trespass. At the close of evidence, however, [PAWC] argued and I agreed that the charge was not supported by the record. Accordingly, that instruction was not contained in the final draft of points for charge that I provided to counsel before their closings and before charging the jury. If [the Olups] disagreed with the exclusion of a proposed charge, an exception should have been taken before the jury received its instructions.

Trial Court Opinion, 8/20/15, at 8 (emphasis in original).

Our review of the record confirms that the Olups did not object to the court's jury charge, which did not include their proposed private nuisance and trespass instructions, before the jury retired. N.T., 3/24–30/15, at 609. Moreover, nothing in the record refutes the trial court's conclusions that the case did not warrant the Olups' proposed instructions and that the Olups did not preserve this issue by taking exception to the trial court's proposed charge. Indeed, the Olups acknowledge that, because "the lower court had

- 13 -

already eliminated the Olups' case on private nuisance and continuing trespass, [a]n 'exception' was pointless as there was no 'case' for nuisance or trespass for the jury to consider." The Olups' Brief at 28. The Olups further observe that the trial court did not hold a charging conference; rather, "the court staff simply presented its instructions to counsel." *Id.* Yet, there is no indication in the certified docket entries that the Olups filed an exception to the proposed charge. Thus, we conclude that the Olups waived their jury instruction challenge.

Next, the Olups complain that the trial court erred in disqualifying Mr. Wright as an expert witness. The Olups' Brief at 28. PAWC argues that Mr. Wright's undisclosed contribution to the 2010 Report is insufficient to qualify him as an expert witness. PAWC's Brief at 11. We reiterate that the standard for qualification of an expert witness is a liberal one. *Callahan*, 979 A.2d at 875. The trial court must "examine whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation." *Id.* at 876.

According to the record, the Olups' counsel offered Mr. Wright as a fact witness to the 1994 water line break and as "limited purpose expert" regarding the 2008 water line break. N.T., 3/24–30/15, at 252. Defense counsel objected because Mr. Wright did not submit an expert report. *Id.* Defense counsel further argued there was no evidence that Mr. Wright was involved in assessing the 2008 break, and any involvement he had with the

1994 break was irrelevant. *Id.* at 253. The trial court suggested that, if Mr. Wright were called as a fact witness, his testimony would be redundant. *Id.* In response, the Olups' counsel argued that Mr. Wright would corroborate and support Mr. Olup's testimony as a disinterested third party. *Id.* at 253–254. Ultimately, the trial court ruled that Mr. Wright could not testify as a fact witness because his testimony would be redundant, and he could not testify as an expert witness because he did not prepare an expert report. *Id.* at 254.

In its opinion to this Court, the trial court described the context of this claim as follows:

> [The Olups] additionally argue that the court improperly excluded Cyrus Wright as an expert witness. Mr. Wright, however, had merely been listed among those whom Mr. Olup had prepared his 1996 report "in concert with". Although [the Olups] asserted that Mr. Wright contributed to the 2010 report, [the Olups] did not assert that Mr. Wright could render Mr. Olup's report current or inform it with pertinent authority.

Trial Court Opinion, 8/20/15, at 5–6.

Upon review, we discern no abuse of the trial court's discretion. The Pennsylvania Rules of Civil Procedure require that a party's pretrial statement include "a copy of the written report, or answer to written interrogatory consistent with Rule 4003.5, containing the opinion and the basis for the opinion of any person who may be called as an expert witness[.]" Pa.R.C.P. 212.2(a)(5). The trial court may preclude or limit the testimony of "any expert witness whose opinions have not been set forth in

the report submitted with the pre-trial statement or otherwise specifically referred to in the pre-trial statement, consistent with Rule 4003.5[.]" Pa.R.C.P. 212.2(c)(1)(ii).

Here, Mr. Wright did not submit an expert report; rather, his name appears in Mr. Olup's handwriting on the 2010 report drafted by Mr. Olup, which the trial court precluded. Nothing in the record demonstrates that Mr. Wright had any reasonable pretension to specialized knowledge on the subject under investigation. *Callahan*, 979 A.2d at 876. Moreover, the Olups have failed to explain how the 2010 report, which failed to qualify Mr. Olup as an expert would, nevertheless, qualify Mr. Wright as an expert. Thus, we conclude that this challenge does not warrant relief.

In their eighth issue, the Olups object to the trial court's exclusion of their videotape evidence. The Olups' Brief at 29. In November of 2014, Mr. Olup and his son, Kenneth, filmed a thirteen-minute video of the interior and exterior of the basement and garage of the Property, a French-drain excavation on the neighboring property located at 725 Agnew Road, and the surrounding geographic area, homes, and path of the water inundations. *Id.* The video represented Mr. Olup's observations on the subject matter. *Id.* at 30. A purpose of the video was to present "the jury with a site 'view': that instead of transporting the jury to the site, the Olups were bringing the site to the jury, via the videotape." *Id.*

PAWC sought exclusion of the video "on the grounds that it was irrelevant, prejudicial, and inflammatory." PAWC's Brief at 12; Motion in Limine, 3/19/15. PAWC maintains on appeal that "[a] video of property that is not even the subject of the litigation would have added nothing to the jurors [sic] understanding of the legal issues in this case." *Id.*

We reiterate that the admission or exclusion of evidence is a matter left to the sound discretion of the trial court. *Harris*, 880 A.2d at 1274. "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.*

The trial court resolved this issue with the following analysis:

> [The Olups] assert that the court erred in excluding videotape evidence. That evidence was an editorialized account of a November 2014 french-drain excavation undertaken at another property on Agnew [Road]. [The Olups] state that the video was offered to illustrate site conditions. Of course, site conditions may be more reliably demonstrated by photographs or videotape that is not so remote in time from the incident and is of the site itself and not of another property. See, *Commonwealth v. Yachymiak*, 351 Pa Super. 361, 505 A.2d 1024 (1986); *Burch v. Sears, Roebuck and Co.*, 320 Pa. Super. 444, 454-55; 467 A 2d 615, 621 (1983).
>
> When defense counsel raised objections to the video, [the Olups] offered to show the video to the jury without playing the recorded commentary. That offer of compromise did not resolve the concern that the videotape was of work that had been performed at a neighboring property several years removed from the incident that [the Olups] had sued upon. The video was a record of matters remote in time and place from any 2008 event affecting [the Olups'] property. Exclusion of the recorded commentary would not lend any greater relevance to the video.
>
> [The Olups] assert, however, that the videotape was offered in substitution of a formal viewing. A view is typically

- 17 -

limited to the particular premises involved in the litigation. Even if [the Olups] could plausibly assert that a view of the Agnew Road area in general would have been appropriate to inform the jury as to the lay of the land and the path of the water, it certainly does not follow that a videotape confined, as [the Olups'] was, to work performed on an [sic] single parcel six years beyond the date of the water line break would serve as substitution for a view of the area. Whatever relevance [the Olups'] videotape might have had to the proceedings was greatly outweighed by the risk of confusing and misleading the jury.

Trial Court Opinion, 8/20/15, at 6–7.

Upon review of the record, we discern no basis for disturbing the trial court's exercise of discretion. The Olups' complaint averred, *inter alia*, that PAWC's negligence caused the 2008 water line break and, therefore, PAWC was liable for damages to the Property. Amended Complaint, 1/21/15, at ¶¶ 16–19. Yet, the videotape showed the condition of the Property and the excavation of a neighbor's French drain in 2014, six years after the 2008 water line break. Such evidence was not relevant to the Olups' averments in that it would not tend to make PAWC's alleged negligence more or less probable. **See Zeffiro v. Gillen**, 788 A.2d 1009, 1015 (Pa. Super. 2001) ("Evidence is relevant if it tends to make a fact at issue more or less probable.").

Even if the contents of the videotape were relevant, the Olups cannot show how they were prejudiced by the trial court's ruling. The videotape would have been cumulative of the testimony of Mr. Olup, Alex Bennett, Jr., the neighbors, Kenneth Olup, and Philip Tompkins; these witnesses testified at trial regarding the condition of the Property, the French drain system, the

PAWC water line on Agnew Road, the 2008 water line break, and the surrounding area. *See* Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). There is no error here.

Lastly, the Olups allege judicial bias in the form of, *inter alia*, criticism, commentaries, interruptions, and the overall atmosphere and tenor of the trial. The Olups' Brief at 35–45. PAWC argues that this issue is waived. PAWC's Brief at 14. We agree.

Judicial bias may **not** be raised for the first time during post-trial proceedings. ***Crawford v. Crawford***, 633 A.2d 155, 160 (Pa. Super. 1993) (citation omitted). "The proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried. He may determine the question in the first instance, and ordinarily his disposition of it will not be disturbed unless there is an abuse of discretion." ***Ware v. U.S. Fid. & Guar. Co.***, 577 A.2d 902, 905 (Pa. Super. 1990) (quoting ***Reilly v. SEPTA***, 489 A.2d 1291, 1299 (Pa. 1985) (citations omitted)). "A party seeking recusal must assert specific grounds in support of the recusal motion before the trial judge has issued a ruling on the substantive matter before him or her." ***Reilly***, 489 A.2d at 1300.

Here, the Olups did not question the trial court's conduct until their post-trial motion for a new trial. Motion for Post-Trial Relief, 4/9/15, at ¶ (xxix). Thus, the Olups waited too long to challenge the impartiality of the trial court. *See Reilly*, 489 A.2d at 1300 (disapproving the practice of subjecting every case to unlimited questioning of the trial judge's impartiality and finding waiver of such claims when they have not been raised before entry of the verdict). Thus, their claim of judicial bias is waived because they failed to preserve it in the trial court with a timely petition for recusal or disqualification. *See Crawford*, 633 A.2d 15 ("[I]t is still the duty of the party, who asserts that a judge should be disqualified, to allege by petition the bias, prejudice or unfairness necessitating recusal.").

Even if not waived, this claim lacks merit. In their brief, the Olups merely recite a string of instances, often taken out of context, in which— they assert—the trial judge exhibited bias. The Olups' Brief at 35–45. "This is not enough to satisfy the requirement that charges of judicial partiality must be set forth with specificity and supported by evidence establishing bias, prejudice or unfairness necessitating recusal." *Ware*, 577 A.2d at 905. Moreover, our review of the certified record finds support for the trial court's denial of prejudicial conduct toward the Olups and the trial court's explanation that its remarks were made outside the hearing of the jury and in the context of argument and conducting the trial. Trial Court Opinion,

8/20/15, at 8–9. Under the circumstances presented by the record in the case at hand, the Olups' final claim does not warrant relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2016